ACCEPTED
07-17-00125-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
7/14/2017 3:33 PM
Vivian Long, Clerk

# No. 07-17-00125-CV

_____

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
7/14/2017 3:33:09 PM
VIVIAN LONG
CLERK

## IN THE SEVENTH COURT OF APPEALS
## AT AMARILLO, TEXAS

_____

MICHAEL QUINN SULLIVAN,
*Appellant,*

v.

SALEM ABRAHAM,
*Appellee.*

_____

On Appeal the 31st District Court of Hemphill County, Texas
(No. 6994)
After Remand from the Supreme Court of Texas
(No. 14-0987)

---

## APPELLANT'S BRIEF

---

James E. "Trey" Trainor, III
State Bar No. 24042052
trey.trainor@akerman.com
AKERMAN LLP
700 Lavaca Street, Suite 1400
Austin, Texas 78701
Tel: (512) 623-6700
Fax: (512) 623-6701

N. Terry Adams, Jr.
State Bar No. 00874010
terry.adams@akerman.com
Joseph M. Nixon
State Bar No. 15244800
joe.nixon@akerman.com
Nicholas D. Stepp
State Bar No. 24077701
nicholas.stepp@akerman.com
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel: (713) 623-0887
Fax: (713) 960-1527

*Counsel for Appellant Michael Quinn Sullivan*

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**      **Michael Quinn Sullivan**

<u>Appellate Counsel</u>

N. Terry Adams, Jr.
State Bar No. 00874010
terry.adams@akerman.com
Nicholas D. Stepp
State Bar No. 24077701
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas  77056
Telephone:  (713) 623-0887
Fax: (713) 960-1527

<u>Trial and Appellate Counsel</u>

Joseph M. Nixon
State Bar No. 15244800
joe.nixon@akerman.com
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas  77056
Telephone:  (713) 623-0887
Fax: (713) 960-1527

James E. "Trey" Trainor, III
State Bar No. 24042052
trey.trainor@akerman.com
AKERMAN LLP
700 Lavaca, Suite 1400
Austin, Texas 78701
Telephone:  (512) 623-6700
Fax: (512) 623-6701

**Appellee:**      **Salem Abraham**

<u>Appellee's Trial and Appellate Counsel</u>

John H. Lovell
State Bar No. 12609300
john@lovell-law.net
Courtney D. Miller
State Bar No. 24055342
courtney@lovell-law.net
LOVELL, LOVELL, ISERN & FARABOUGH, LLP
112 West 8th Avenue, Suite 1000
Amarillo, Texas  79101-2314
Telephone: (806) 373-1515
Fax: (806) 379-7176

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................ ii

Index of Authorities ...............................................................................v

Designation of Record References.............................................................x

Statement of the Case............................................................................ xi

Issues Presented ................................................................................. xii

Statement of Facts ................................................................................1

Summary of the Argument.......................................................................6

Argument.............................................................................................7

I.    The district court abused its discretion in failing to follow the test
established by the Supreme Court of Texas for determining
reasonable attorney's fees................................................................7

    A.    The Supreme Court of Texas has directed that a reasonable
fee is fair and moderate, not excessive or extreme. ...........................7

    B.    There is very little disagreement in the record about what
an award of reasonable fees should be..............................................10

        1.    Time and labor required, novelty and difficulty of
the questions, skill required to perform the legal
services properly .................................................................10

        2.    Likelihood that the acceptance of the particular
employment will preclude other employment by the
lawyer................................................................................14

        3.    Fee customarily charged in the locality for similar
legal services .....................................................................14

        4.    Amount involved and results obtained .....................................15

        5.    The time limitations imposed by client or
circumstances .....................................................................16

        6.    Nature and length of professional relationship
between lawyer and client......................................................16

        7.    Experience, reputation, and ability of the lawyers ...................17

        8.    Whether the fee is fixed or contingent on results
obtained or uncertainty of collection ......................................17

C.     The district court failed to apply the law correctly and acted without reference to guiding principles. ......................17

II.   The district court's judgment must be reversed because there is no evidence to support Findings of Fact 5, 6, 7, 8, or 9. .............................20

A.     The district court abused its discretion and failed to apply the law correctly in sustaining Abraham's objections. .......................21

1.     There is evidence of the fees customarily charged in the locality for similar services. ...............................................22

2.     Sullivan offered ample evidence from which both Abraham and the district court could engage in a meaningful review of the fees sought. .....................................22

3.     It was an abuse of discretion to sustain Abraham's testimonial objections. ..........................................................23

4.     Blended rates are commonplace and comply with the Texas Disciplinary Rules. ....................................................24

5.     Abraham's litigation tactics, not the amounts Sullivan seeks, disincentivize the cessation of litigation. In any event, this is not a recognized basis for a legal objection.................................................................25

B.     There is no evidence to support Findings of Fact 5, 6, 7, 8, and 9. ......................................................................................26

1.     Salem Abraham sued Sullivan for defamation despite knowing prior to filing suit that Sullivan was not Greer's source. ..................................................................26

2.     No evidence supports a relationship between Sullivan and Greer such that it was proper to infer that Sullivan could have been Greer's source..........................28

3.     The award to Michael Quinn Sullivan of $35,000 in attorney's fees through remand from the Supreme Court relies on an incorrect legal standard and has no evidence to support it. .....................................................29

4.     The award to Michael Quinn Sullivan of $7,200 in attorney's fees for work after remand relies on an incorrect legal standard and has no evidence to support it. ...........................................................................31

III.   In Findings of Fact 8 and 9, the trial court reversibly erred by commingling in a broad-form finding multiple damages elements that are legally insufficient. ...............................................................32

    A.   Reversible error is presumed under *Casteel* and its progeny. ..................................................................................32

    B.   *Casteel* and its progeny apply to findings of fact..............................33

    C.   Finding of Fact 8 ...............................................................35

    D.   Finding of Fact 9 ...............................................................39

IV.   The district court erred in failing to award conditional appellate attorney's fees. ..............................................................................42

Conclusion and Prayer ......................................................................44

Certificate of Compliance ...............................................................46

Certificate of Service ......................................................................46

Appendix

    Tab A                Final Judgment, signed February 27, 2017

    Tab B                Findings of Fact and Conclusions of Law

    Tab C                Motion to Abate Appeal for Findings of Fact and Conclusions of Law

    Tab D                Order of July 5, 2017, denying Motion to Abate

    Tab E                Order Awarding Attorney Fees and Sanctions, *McGibney v. Retzlaff*, No. 067-270669-14, 2016 WL 1703694 (67th Dist. Ct., Tarrant Cnty., Apr. 14, 2016)

# INDEX OF AUTHORITIES

**Cases**

*Abraham v. Greer*,
474 S.W.3d 731 (Tex. App.—Amarillo 2014)*, rev'd,* 484 S.W.3d
440 (Tex. 2016)........................................................................................13

*Abraham v. Greer*,
509 S.W.3d 609 (Tex. App.—Amarillo 2016, pet. denied) ..........................2, 23

*Arthur Andersen & Co. v. Perry Equipment Corp.*
945 S.W.2d 812 (Tex. 1997) ....................................................................6, 8, 18

*Beaumont Bank, N.A. v. Buller*,
806 S.W.2d 223 (Tex. 1991) ....................................................................17

*Bocquet v. Herring*,
972 S.W.2d 19 (Tex. 1998)........................................................................42

*Busteed v. Coldspring Oakhurst Consol. Indep. Sch. Dist.*,
No. 07-02-00103-CV, 2002 WL 31549428 (Tex. App.—Amarillo
Nov. 18, 2002, no pet.) ................................................................29, 31, 38, 40

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ................................................................20, 21, 22

*City of Lardeo v. Montano*,
414 S.W.3d 731 (Tex. 2013) ....................................................................9

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*,
136 S.W.3d 227 (Tex. 2004) ................................................................21, 38, 40

*Crown Life Ins. Co., v. Casteel*,
22 S.W.3d 378 (Tex. 2000)....................................................................passim

*Cruz v. Van Sickle*,
452 S.W.3d 503 (Tex. App.—Dallas 2014, pet. denied)............................13, 42

*D'Lux Movers & Storage v. Fulton*,
No. 02-06-0019-CV, 2007 WL 1299400 (Tex. App.—Fort Worth
May 3, 2007, pet. denied) ........................................................................24

*DaimlerChrysler Motors Co. v. Manuel*,
  362 S.W.3d 160 (Tex. App.—Fort Worth 2012, no pet.)....................................42

*Dallas Cnty. Constable Precinct No. 5 v. Garden City Boxing Club,
  Inc.*,
  219 S.W.3d 613 (Tex. App.—Dallas 2007, no pet.) ........................................20

*Deutsch v. Henry*,
  2016 WL 7165993 (W.D. Tex. Dec. 7, 2016) ....................................................44

*El Apple I, Ltd. v. Olivas*,
  370 S.W.3d 757 (Tex. 2012) .............................................................................22

*Expelled Grain Prods., LLC v. Corn Mill Enters, LLC*,
  No. 07-14-00398-CV, 2016 WL 4413323 (Tex. App.—Amarillo
  Aug. 17, 2016, pet. denied)..................................................................................9

*Ford Motor Co. v. Ridgway*,
  135 S.W.3d 598 (Tex. 2004) .............................................................................21

*Garcia v. Gomez*,
  319 S.W.3d 638 (Tex. 2010) ...............................................................................7

*Gates v. City of Dallas*,
  704 S.W.2d 737 (Tex. 1986) .............................................................................43

*Green v. Alford*,
  274 S.W.3d 5 (Tex. Ap.—Houston [14th Dist.] 2008, pet. denied)..................20

*Greer v. Abraham*,
  489 S.W.3d 440 (Tex. 2016) ...............................................................................2

*Hancock v. Variyam*,
  400 S.W.3d 59 (Tex. 2013).....................................................................21, 38, 40

*Harris Cnty. v. Smith*,
  96 S.W.3d 230 (Tex. 2002).........................................................33, 34, 39, 41

*Hersh v. Tatum*,
  ___ S.W.3d ____, 2017 WL 2839873 (Tex. 2017) ...........................................44

*In re Alford Chevrolet-Geo*,
  997 S.W.2d 173 (Tex. 1999) .............................................................................27

*In re Am. Homestar of Lancaster, Inc.*,
50 S.W.3d 480 (Tex. 2001)..........................................................................17

*In re Marriage of C.A.S and D.P.S.*,
405 S.W.3d 373 (Tex. App.—Dallas 2013, no pet.) .........................................33

*Jackson v. VanWinkle*,
660 S.W.2d 807 (Tex. 1983) .......................................................................17

*Khan v. Chaudhry*,
No. 09-14-0479-CV, 2016 WL 1158734 (Tex. App.—Beaumont
Mar. 24, 2016, pet. denied)........................................................................24

*Kindred v. Con/Chem, Inc.*,
650 S.W.2d 61 (Tex. 1983)..........................................................................21

*Long v. Griffin*,
442 S.W.3d 253 (Tex. 2014) ...............................................................8, 9, 22

*Lopez v. Bailon*,
No. 07-14-00442-CV, 2016 WL 4158034 (Tex. App.—Amarillo
Aug. 4, 2016, no pet.) ..............................................................................9, 19

*Lowe v. Johnson Cnty.*,
No. 03A01-9309-CH-00321, 1995 WL 306166 (Tenn. Ct. App.
May 19, 1995)............................................................................................20

*McGibney v. Retzlaff*,
No. 67-270669-14, 2016 WL 1703694 (67th Dist. Ct., Tarrant
Cnty.) (Apr. 14, 2016) ................................................................................15

*Murrco Agency, Inc. v. Ryan*,
800 S.W.2d 600 (Tex. App.—Dallas 1990, no writ)..................................29, 31

*Prairie Valley Ind. Sch. Dist. v. Sawyer*,
665 S.W.2d 606 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) ...............29, 31

*Rauhauser v. McGibney*,
508 S.W.3d 377 (Tex. App.—Fort Worth 2014, no pet.)................................13

*Roger v. Zanetti*,
___ S.W.3d ____, 2017 WL 1553154 (Tex. 2017) ............................................21

*Schwartz v. Folloder*,
767 F.2d 126 (5th Cir. 1985) ....................................................................44

*Sciarrilla v. Osborne*,
946 S.W.2d 919 (Tex. App.—Beaumont 1997, pet. denied) ......................23, 24

*Simmons v. State*,
100 S.W.3d 484 (Tex. App.—Texarkana 2003, pet. ref'd)..............................25

*Sullivan v. Abraham*,
472 S.W.3d 677 (Tex. App.—Amarillo 2014)*, rev'd in part,* 488
S.W.3d 294 (Tex. 2016)...........................................................................passim

*Sullivan v. Abraham*,
488 S.W.3d 294 (Tex. 2016) ....................................................................passim

*Tagle v. Galvan*,
155 S.W.3d 510 (Tex. App.—San Antonio 2004, no pet.) ..............................33

*Thota v. Young*,
366 S.W.3d 678 (Tex. 2012) ....................................................32, 33, 39, 41

*Town Ctr. Mall, L.P. v. Dyer*,
2015 WL 5770583 (Tex. App.—Fort Worth 2015, pet. denied)......................33

*Ventling v. Johnson*,
466 S.W.3d 143 (Tex. 2015) ...........................................................19, 42, 43

*Wilkins v. Royal Indemn. Co.*,
592 S.W.2d 64 (Tex. Civ. App.—Tyler 1979, no writ) ...................................23

*Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*,
422 S.W.3d 821 (Tex. App.—Dallas 2014, no pet.) .......................................35

*Zaidi v. Shah*,
502 S.W.3d 434 (Tex. App.—Houston [14th Dist.] 2016, pet.
denied)..................................................................................................passim

**Statutes**

TEX. BUS. & COM. CODE § 17.50(d) .................................................................29

TEX. CIV. PRAC. & REM. CODE § 27.002..............................................................44

TEX. CIV. PRAC. & REM. CODE § 27.003............................................................13, 28

TEX. CIV. PRAC. & REM. CODE § 27.009...........................................................passim

TEX. CIV. PRAC. & REM. CODE § 27.009(a) ...............................................15, 16, 38

TEX. CIV. PRAC. & REM. CODE § 27.011 .....................................................................43

TEX. CIV. PRAC. & REM. CODE § 38.001......................................................29, 43

TEX. GOV'T CODE § 22.001 ...................................................................................14

## Rules

TEX. DISC. R. PROF'L CONDUCT 1.04 ...................................................................8

TEX. R. APP. P. 33.1(a)(2) .....................................................................................5

TEX. R. CIV. P. 13...............................................................................................26

## Other Authorities

Gilbreath, Robert B., *Caught in a Crossfire*, TEX. TECH L. REV. 139,
178 (1996)..............................................................................................25

*New Roget's Thesaurus in Dictionary Form* ........................................................37

OFFICE OF COURT ADMIN.,
ANNUAL STATISTICAL REPORT FOR THE TEX. JUDICIARY (FISCAL
YEAR 2016)  (2016)..................................................................................14

Prather, Laura Lee, *Five Years of Anti-SLAPP in Texas* 3 (2016) ........................43

1 TEX. PRAC. GUIDE
WILLS, TRUSTS & ESTATE PLANNING § 2:63 (Dec. 2016) ...................................24

*Webster's New World Dictionary, Second College Edition* ....................................37

White, Mark D. & L. Hayes Fuller, III, *Attorney Fees Update*..............................24

# DESIGNATION OF RECORD REFERENCES

**<u>Clerk's Record:</u>**          (CR[volume]:[page])

    Volume 1:          Original trial court proceedings

    Volume 2:          Trial court proceedings on remand


**<u>Reporter's Record:</u>**          (RR[volume]:[page])

    Volumes 1 & 2:          Original trial court proceedings

    Volume 3:          Trial court proceedings on remand

# STATEMENT OF THE CASE

*Nature of the case:*      This appeal involves an award of attorney's fees following a dismissal of a defamation claim pursuant to the Texas Citizens Participation Act (TCPA). (CR2:439; CR1:768).

*Trial Court information:*      31st Judicial District Court,
Hemphill County, Texas
The Honorable Steven Emmert

*Course of proceedings:*      The trial court dismissed Salem Abraham's defamation claim, awarded approximately 10% of the attorney's fees, costs, and expenses sought by Michael Quinn Sullivan, and refused to award any sanction against Salem Abraham. (CR1:768–69).

In the first appeal, this Court reversed in part, holding that an award of sanctions was mandatory under the TCPA. *Sullivan v. Abraham*, 472 S.W.3d 677, 683 (Tex. App.—Amarillo 2014), *re'vd on other grounds,* 488 S.W.3d 294 (Tex. 2016). The Court affirmed the remainder of the judgment.

The Supreme Court of Texas reversed, holding that considerations of justice and equity do not inform an award of costs or reasonable attorney's fees under the TCPA. *Sullivan v. Abraham*, 488 S.W.3d 294, 299–300. The supreme court remanded for an award of costs, reasonable attorney's fees, other expenses as justice and equity require, and a sanction.

*Trial Court disposition:*      On remand, the trial court awarded Michael Quinn Sullivan $35,000 in attorney's fees for services performed prior to remand by the Supreme Court of Texas, $7,200 in attorney's fees for services performed after remand by the Supreme Court of Texas, $1,621.60 in costs, $17,240.03 in other expenses as justice and equity require, and a $15,000 sanction against Abraham. (CR2:439–40).

# ISSUES PRESENTED

1. The trial court abused its discretion because it misapplied the law and acted without reference to guiding principles in awarding an extreme and excessively low amount of reasonable attorney's fees to Michael Quinn Sullivan.

2. No evidence supports the trial court's award of $35,000 in attorney's fees as damages before remand.

3. No evidence supports the trial court's award of $7,200 in attorney's fees as damages after remand.

4. The trial court reversibly erred in commingling legally insufficient damage elements with the broad-form damage finding in Finding of Fact 8.

5. The trial court reversibly erred in commingling legally insufficient damage elements with the broad-form damage finding in Finding of Fact 9.

6. The trial court reversibly erred in failing to award conditional appellate fees.

**STATEMENT OF FACTS**

This defamation case was dismissed under Chapter 27 of the Texas Civil Practice and Remedies Code, the Texas Citizens Participation Act (TCPA). Salem Abraham sued Michael Quinn Sullivan based upon Abraham's speculation that Sullivan was the source for a news article regarding Abraham's activities at a political rally. (CR1:5).

The rally was a campaign event for then-State Representative Jim Landtroop. Abraham, a member of the board of trustees of the Canadian Independent School District, attended the event as a public servant to "make the true facts known" about an ongoing debate in the campaign. (CR1:6–9). The controversy was whether Landtroop's opponent increased spending while serving on the board of CISD. (CR1:615).

Daniel Greer, a reporter for AgendaWise, who did not attend the event, reported on Abraham's activities in a July 27, 2012 article. (CR1:9–10, 17). In the article, statements were made indicating that Abraham was asked to leave the meeting for improper conduct. (CR1:17).

In August 2012, Abraham contacted Greer and requested a correction to the article. (CR1:11). Despite Greer's making the correction, Abraham sued Greer and AgendaWise. (CR1:18–19, 537). *Salem Abraham v. Daniel Greer & Fix the Facts*

*Foundation d/b/a AgnedaWise* (31st Dist., Hemphill Cnty.) (hereinafter "First Lawsuit").

Abraham's First Lawsuit was dismissed under the TCPA. (CR1:534 Ex. 2 & 3). On appeal, the Supreme Court of Texas clarified the constitutional standard for applying the *New York Times* actual malice rule to public officials in the context of publication on the internet of allegedly defamatory statements, and remanded to this Court for a determination of Abraham's open-courts and due process challenges. *Greer v. Abraham*, 489 S.W.3d 440 (Tex. 2016). This Court held that (1) Abraham did not preserve his complaint regarding Greer's invocation of the journalist's privilege, (2) Abraham did not preserve his argument that the district court erred in ruling that Greer and AgendaWise were journalists, and (3) neither the TCPA, nor the Reporter's Shield Law, nor the two working in concert violate the Open Courts provision of the Texas Constitution. *Abraham v. Greer*, 509 S.W.3d 609, 612, 613, 617 (Tex. App.—Amarillo 2016, pet. denied).

In April 2013, Abraham filed this lawsuit based on the same statements as in the dismissed First Lawsuit. (CR1:5). Abraham alleged that Sullivan could have been the source who provided information about Abraham's activities at the rally to Greer and AgendaWise. (CR1:14). Abraham admitted in his petition that there was no evidence that Sullivan was Greer's source or that the two ever discussed Abraham. It is also undisputed that, like Greer, Sullivan was not in attendance at

the Levelland rally. Abraham alleged only that "it is a reasonable inference that the person informing Daniel Greer about Salem [Abraham] was Michael Quinn Sullivan" because they have daily discussions about politics. (CR1:15). Greer set the record straight in Abraham's First lawsuit when he testified that Sullivan did not tell him anything about the Levelland meeting. (RR1:7–9).

Sullivan moved to dismiss this lawsuit under the TCPA. (CR1:534). Pursuant to section 27.009 of the TCPA, Sullivan also requested reasonable attorney's fees, costs, expenses, and a sanction against Abraham.[1] (CR1:544, 732–38).

After conducting an evidentiary hearing, the trial court dismissed Abraham's defamation claim under the TCPA. (CR1:768). However, the trial court awarded Sullivan only $6,500 in attorney's fees and $1,500 in costs and expenses—a small fraction of the fees, costs, and expenses that Sullivan proved. (CR1:768). Sullivan appealed the award of attorney's fees, costs, and expenses, as well as the trial court's refusal to award any sanctions, which the TCPA makes mandatory. This Court affirmed in part and reversed and remanded in part. *Sullivan v. Abraham*, 472 S.W.3d 677 (Tex. App.—Amarillo 2014)*, rev'd in part,* 488 S.W.3d 294 (Tex. 2016). This Court affirmed the $6,500 attorney's fees award on the basis that considerations of equity and justice inform the determination of an attorney's

---

[1] TEX. CIV. PRAC. & REM. CODE § 27.009.

fees award under the TCPA. *Id.* at 682. This Court also concluded that Sullivan's evidence had not detailed every task performed and did not reflect the prevailing legal rates in the Texas Panhandle. *Id.* at 683. The Court then remanded for the trial court to award Sullivan mandatory sanctions against Abraham. *Id.* at 683.

The Supreme Court of Texas reversed, holding that considerations of justice and equity do not inform the determination of an award of reasonable attorney's fees under the TCPA. *Sullivan v. Abraham*, 488 S.W.3d 294, 298–99 (Tex. 2016). The case was then remanded to the trial court for a determination of (1) costs, (2) reasonable attorney's fees, and (3) other expenses as justice and equity require, (4) plus a sanction against Abraham in an amount sufficient to deter him from filing frivolous lawsuits in the future. *Id.* at 300.

On remand, Sullivan offered detailed time entries that identified the work performed, the time required, the date on which the work was performed, the lawyer who performed the work, and that lawyer's hourly rate. (CR2:33–69). In total, Sullivan sought:

| | |
|---|---|
| $1,621.60 | in costs; |
| $296,805.00 | in attorney's fees before remand; |
| $12,358.50 | in attorney's fees after remand by the Supreme Court of Texas; |
| $17,240.03 | in other expenses incurred by Sullivan that justice and equity require to be awarded. |

4

(CR2:412, 420).

The district court conducted another evidentiary hearing. This time, the trail court awarded Sullivan:

| | |
|---|---|
| $1,621.60 | in costs; |
| $35,000.00 | in attorney's fees from the beginning of the case until remand by the Supreme Court of Texas; |
| $7,200.00 | in attorney's fees after remand by the Supreme Court of Texas; and, |
| $17,240.03 | in other expenses incurred by Sullivan that justice and equity require to be awarded. |

(CR2:439–40).[2]

Sullivan timely requested Findings of Fact and Conclusions of Law. (CR2:441). The trial court's Findings of Fact and Conclusions of Law, which were drafted by Abraham, were filed on March 20, 2017. (CR2:443). Sullivan then timely objected to the trial court's Findings of Fact and Conclusions of Law and requested additional and amended findings and conclusions. (CR2:447). The trial did not amend or supplement its findings and conclusions as requested by Sullivan and thus overruled Sullivan's objections.[3] This appeal ensued. (CR2:480).

---

[2] Pursuant to the judgment, post-judgment interest at the rate of 5% per annum accrues on all amounts awarded until paid. (CR2:439–40)

[3] *See* TEX. R. APP. P. 33.1(a)(2).

Sullivan moved to abate the appeal for remand to the district court for entry of more specific findings of fact and conclusions of law. (App. C) This Court denied Sullivan's motion to abate on July 4, 2017. (App. D)

## SUMMARY OF THE ARGUMENT

The district court had a mandatory duty to exercise sound discretion in awarding Michael Quinn Sullivan reasonable attorney's fees pursuant to the Texas Citizens Participation Act (TCPA) and the mandate of the Supreme Court of Texas. A reasonable fee is one that is moderate and fair, not excessive or extreme. The district court awarded an excessively low and extreme fee of $35,000 for legal services performed from the inception of this case through an appeal to this Court and an appeal to the Supreme Court of Texas, and $7,200 for legal services performed on remand from the supreme court. This was an abuse of discretion because the trial court acted without reference to guiding principles—the test established by the Supreme Court of Texas, the *Arthur Andersen* factors, and the evidence adduced by the parties.

Also, no probative evidence supports Findings of Fact 5, 6, 7, 8, and 9, which themselves emanate from several reversibly erroneous evidentiary rulings. There is simply no way for a reasonable factfinder to consider the record in this case and reach the decision that the trial court reached.

6

Reversal is required for the additional reason that the broad-form damages findings in Findings 8 and 9 commingle invalid and/or legally insufficient elements of damages, in violation of *Crown Life Ins. Co. v. Casteel* and its progeny. Finally, the trial court reversibly erred in refusing to award Michael Quinn Sullivan conditional appellate fees. When an award of trial court attorney's fees is made mandatory by statute, conditional appellate attorney's fees in an amount supported by the evidence are also mandatory.

## ARGUMENT

I. **The district court abused its discretion in failing to follow the test established by the Supreme Court of Texas for determining reasonable attorney's fees.**

   A. **The Supreme Court of Texas has directed that a reasonable fee is fair and moderate, not excessive or extreme.**

The supreme court held in this case that the TCPA requires an award of reasonable attorney's fees to a successful movant. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). The supreme court therefore remanded this case to the district court for determination of reasonable attorney's fees, with the instruction that a reasonable attorney's fee "'is one that is not excessive or extreme, but rather moderate or fair.'" *Id.* (citing *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)). Reasonable means fair, proper, or moderate under the circumstances. *Garcia v. Gomez*, 319 S.W.3d 638, 642 n.3 (Tex. 2010) (citing *Reasonable*, BLACK'S LAW DICTIONARY 1272 (7th ed. 1999)).

7

The reasonableness of a fee award requires a factfinder to consider the factors set out in *Arthur Andersen & Co. v. Perry Equipment Corp.* 945 S.W.2d 812, 818 (Tex. 1997). Those factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and,

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d at 818; TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04. A party seeking to recover a reasonable attorney's fee under the lodestar method must offer evidence of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required. *Long v. Griffin*,

8

442 S.W.3d 253, 255 (Tex. 2014). This information provides the trial court sufficient information to review a fee request. *Id.*

For example, when an attorney testified that she used a billing system to track and bill her time in a case, that she had billed her client for her work, and specified the number of hours she had spent on the case as well as the hourly rate in her client contract, the supreme court held that was sufficient evidence on which to base an award of attorney's fees. *City of Lardeo v. Montano*, 414 S.W.3d 731, 737 (Tex. 2013).

The reasonableness of an award of attorney's fees is ordinarily left to the sound discretion of the factfinder, and a reviewing court may not substitute its judgment for that of the factfinder. *Expelled Grain Prods., LLC v. Corn Mill Enters, LLC*, No. 07-14-00398-CV, 2016 WL 4413323, at *9 (Tex. App.—Amarillo Aug. 17, 2016, pet. denied). To calculate reasonable attorney's fees, the factfinder should multiply the number of hours worked by the attorney's hourly rate. *Lopez v. Bailon*, No. 07-14-00442-CV, 2016 WL 4158034, at *5 (Tex. App.—Amarillo Aug. 4, 2016, no pet.).

Sullivan provided far more evidence than the supreme court approved in *Montano*. He offered detailed time entries from the inception of the case through proceedings on remand. (CR2:36–59, 419–20). Sullivan also offered expert testimony regarding the novelty and difficulty of the questions involved; the skill

required to perform the legal services properly; the fees customarily charged for similar services (including fees customarily charged in the locality); the amount involved and the results obtained; the time limitations imposed; and, the experience, reputation, and ability of the lawyers performing the services. (CR2:66–67, 414–17).

> **B. There is very little disagreement in the record about what an award of reasonable fees should be.**
>
> > **1. Time and labor required, novelty and difficulty of the questions, skill required to perform the legal services properly**

Despite the vitriol, the record before the district court does not disclose significant disagreement about what a reasonable attorney's fee award should be in this case. Mr. Lovell, Abraham's expert on attorney's fees, opined that the number of "hours incurred by an opposing party in litigation" is "relevant evidence to consider in determining" a reasonable attorney's fee. (CR2:86 ¶39). Abraham's expert then compares the hours Abraham's lawyer spent on this litigation to those spent by Sullivan's counsel, offering the hours Abraham's lawyers spent on the case as a yardstick by which to measure reasonableness. (CR2:86 ¶¶39–40; CR2:100).

Attorneys for the respective parties spent, apples to apples, a very similar number of hours on this case—except when Abraham's legal team spent far more hours on the case. In the original trial court proceedings, Abraham's counsel spent

177.2 hours on the case *in addition to* 23.85 paralegal hours. (CR2:82). Sullivan's counsel spent 140.9 hours on the case during that same period. (CR2:59, 82). The only quibble Abraham ever offered about the number of hours Sullivan's counsel spent on this case in the original trial court proceedings pertained to 16 hours of attorney time incurred on a Motion to Recuse. (CR2:87).[4] Accordingly, there is no reasonable disagreement in the record about the reasonableness of Sullivan's legal team spending 141 hours on this case in the original trial court proceedings— during which time Abraham's legal team spent 201 hours.

The record discloses no meaningful criticism or dispute by Abraham about the reasonableness of the number of hours Sullivan's counsel spent on this case in the original trial court proceedings. Nor, in light of the evidence, could there be. (CR2:86 (Abraham admitting that his counsel's hours are relevant to determining hours reasonably spent and using his counsel's time as a yardstick by which to measure the time Sullivan's counsel spent on the case))

In the earlier proceedings in this Court:

- Abraham's legal team spent 127.85 hours; and,

- Sullivan's attorneys spent 172.3 hours.

---

[4] In total, Sullivan's counsel incurred $6,187.50 in legal fees on the Motion to Recuse. (CR2:405) Abraham never disputed that this amount was incurred on that Motion.

(CR2:82). This discrepancy was reasonably explained by the fact that, as the appellant, Sullivan reasonably filed a reply brief. Comparing apples to apples, the hours spent by the parties on their respective principal briefs and oral argument are remarkably similar:

- Abraham's legal team spent 127.85 hours; and,

- Sullivan's attorneys spent 131.2 hours.

(CR2:406–07). The 41-hour discrepancy between the two sides' hours is due entirely to the reply brief, as a meaningful examination of the detailed time entries demonstrates. (CR2:407). No facts or evidence tend to contradict this explanation.

The hours the parties spent on this case in the Supreme Court of Texas follow the same pattern. For the petition, response, the respective principal merits briefs, and oral argument:

- Abraham's legal team spent 250.72 hours; and,

- Sullivan's attorneys spent 246.2 hours.

(CR2:407). The difference in the overall number of hours spent by the parties is entirely accounted for by the Reply in Support of Sullivan's Petition for Review (51 hours) and Sullivan's Reply Brief on the Merits (92.7 hours). (CR2:407). Sullivan pointed out in detail to the district court that the discrepancies in the hours spent on this case were explained by the preparation and filing of replies (which appellants and petitioners are required to do under the Rules of Appellate

Procedure). (CR2:405–07). No facts or evidence tends to contradict this explanation.

Accordingly, on the record before the district court, there was no meaningful dispute about the reasonableness of Sullivan's counsel's having spent 128 hours on this case in the original district court proceedings, or 131.2 hours on this case in the first appeal in this Court, or 246.2 hours in the Supreme Court of Texas.

Regarding the novelty and difficulty of the questions involved and the skill required to perform the legal services properly, it cannot be escaped that, on the evidence before the district court, this Court had never used the term "anti-SLAPP" in an opinion, and had cited Section 27.003 only once—in Abraham's case against Daniel Greer. (CR2:415). *Abraham v. Greer*, 474 S.W.3d 731 (Tex. App.—Amarillo 2014)*, rev'd,* 484 S.W.3d 440 (Tex. 2016). The district court's decision in this case was reversed in part by this Court, and in other respects by the Supreme Court of Texas. Prior to the supreme court's clarification of Texas law in this case, there was considerable confusion among courts of appeal in Texas about what considerations inform a determination of reasonable attorney's fees under the TCPA and how to review those awards. *See, e.g.*, *Rauhauser v. McGibney*, 508 S.W.3d 377, 389–90 (Tex. App.—Fort Worth 2014, no pet.); *Cruz v. Van Sickle*, 452 S.W.3d 503, 526 (Tex. App.—Dallas 2014, pet. denied). On these facts, any

13

suggestion that the issues involved were not novel or the services required were not difficult, (CR2:90), cannot be entertained.[5]

## 2. Likelihood that the acceptance of the particular employment will preclude other employment by the lawyer

Abraham's expert opined that, because the likelihood that Sullivan's attorneys would ever be retained by Abraham, this factor did not merit an upward adjustment of fees. (CR2:91). Sullivan did not seek an upward adjustment of fees based on this factor. (CR2:66).

## 3. Fee customarily charged in the locality for similar legal services

There is little disagreement about rates in the record, too. Abraham admitted that a rate of $375 would be reasonable for an experienced attorney, and $225 would be reasonable for an associate. (CR2:91). In the context of the evidence, Abraham complained about partner rates in the district court and in this Court, and about associate rates in the supreme court. Even if the district court agreed with Abraham's expert's testimony about rates, the evidence supports, at most, an 8% discount—$24,528 off of the $296,805 in fees at issue. (CR2:404–05).

---

[5] Indeed, the statistics from the Texas Office of Court Administration demonstrate that it is extraordinarily difficult to convince the Supreme Court of Texas to grant a petition for review, like Sullivan did in this case. The supreme court grants only about 11% of the petitions filed in that court in a fiscal year. OFFICE OF COURT ADMIN., ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY (FISCAL YEAR 2016) at Court-Level 3 (2016). By definition, all of the cases granted involve important questions of law that impact the jurisprudence of the state. TEX. GOV'T CODE § 22.001.

#### 4. Amount involved and results obtained

Abraham sought tens of millions of dollars in damages in his defamation suit. (RR1:66. *See also* CR1:325 (claiming to have been damaged in "very large amounts of money")) Abraham's expert's testimony avoided acknowledging this indisputable fact, instead preferring to cast the first appeal as an attempt to recover the trial fees not awarded in the first judgment. (CR2:91–92). That evidence is incorrect and incomplete; no reasonable factfinder could have credited it as a matter of law.

Even after the dismissal of Abraham's defamation claim, significant issues remained. They included an award of costs, reasonable attorney's fees, other expenses, and a sanction—potentially very large—that Texas law required be awarded to Sullivan. *Sullivan v. Abraham*, 472 S.W.3d 677, 683 (Tex. App.— Amarillo 2014*), rev'd on other grounds,* 488 S.W.3d 294 (Tex. 2016). *See, e.g.*, Order, *McGibney v. Retzlaff*, No. 67-270669-14, 2016 WL 1703694, at *4 (67th Dist. Ct., Tarrant Cnty.) (Apr. 14, 2016).[6] Three significant legal issues also remained: (1) whether a district court had discretion under the TCPA to refuse to award a sanction that the TCPA says "shall" be awarded, TEX. CIV. PRAC. & REM. CODE § 27.009(a)(2); and, (2) whether considerations of justice and equity properly inform an award of costs, *id.* § 27.009(a)(1); and, (3) whether considerations of

---

[6] *Available at* App. E.

15

justice and equity properly inform a district court's determination of a reasonable attorney's fee, *id.* § 27.009(a)(1).

Regarding the results obtained, Sullivan prevailed on all three legal issues. *Sullivan*, 472 S.W.3d at 683 (issue 1); *Sullivan*, 488 S.W.3d at 299 (issues 2 and 3). Sullivan also obtained a $15,000 sanction, Sullivan has now been awarded the entirety of his costs and other expenses up through the time of the district court's judgment, and Sullivan obtained a significantly increased award of attorney's fees. (CR2:439–40).

### 5. The time limitations imposed by client or circumstances

Neither party sought an adjustment of attorney's fees on the basis of any time limitation. (CR2:67, 92).

### 6. Nature and length of professional relationship between lawyer and client

There is no basis in the record for any specific adjustment of an attorney's fee award based on the nature and length of the professional relationship between Sullivan and his counsel. (CR2:67, 93). Nor did Abraham's expert provide any specific basis for his opinion that Sullivan's counsel had represented him for any length of time, or that the rates sought were not discounted. There is no evidence anywhere that Sullivan's counsel represented him in any litigation before Salem Abraham sued Sullivan; they did not.

## 7. Experience, reputation, and ability of the lawyers

There is no dispute between the parties regarding an adjustment of the attorney's fee award based on the experience, reputation, or ability of any lawyer involved in this case. (CR2:67, 93).

## 8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection

Neither party sought an adjustment of fees based on a contingency of collection before the legal services were performed. (CR2:67, 93).

## C. The district court failed to apply the law correctly and acted without reference to guiding principles.

The determination of whether a trial court abused its discretion is a question of law. *Jackson v. VanWinkle*, 660 S.W.2d 807, 810 (Tex. 1983). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A trial court has no discretion to determine what the law is or in applying the law to the facts and, consequently, the trial court's failure to analyze or apply the law correctly is an abuse of discretion. *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001).

The district court's determination that a reasonable attorney's fee for defeating a claim that sought tens of millions of dollars in damages, and then

prevailing on two successive appeals was $35,000 is an abuse of discretion that resulted from the district court's acting without reference to guiding principles and failing to apply the law as instructed by the Supreme Court of Texas *in this very case* correctly. The award of attorney's fees is extreme and excessively low and must be reversed.

As demonstrated above, there was little disagreement between the parties regarding what would be a reasonable attorney's fee in this case. As shown above:

- Comparing similar tasks, the parties spent nearly the same number of hours on this case.

- The hours discrepancy between the parties comes entirely from the reply brief in the first appeal in this Court (41.1 hours, CR2:34–56, 407), the Reply in Support of Sullivan's Petition for Review (51 hours, CR2:34–56, 407), and Sullivan's Reply Brief on the Merits in the Supreme Court of Texas (92.7 hours, CR2:34–56, 407). Because of the procedural posture of this case, Abraham's counsel did not prepare replies. They performed substantially less work, and nevertheless incurred in excess of $130,000 in attorney's fees prior to remand. (CR2:82–83).

- Among the *Arthur Andersen* factors, there was material divergence between the parties' positions only with respect to the amount at issue and the results obtained. But no expert opinion can undo the fact that Abraham himself sued for tens of millions of dollars, or that Sullivan prevailed on the legal issues, clarified important Texas law, and stood to gain significant sums by virtue of the original appeal. Abraham's expert's testimony was incorrect as a matter of law, as the opinions of this Court and the supreme court show, and as the judgment of the district court also demonstrates.

If the district court had considered the *Arthur Andersen* factors in order to award a fair or moderate attorney's fee as instructed by the Supreme Court of

Texas, it could not have awarded $35,000 for all work done prior to remand because:

- The $35,000 award is substantially less than the attorney's fees Abraham says he reasonably incurred in the original trial court proceedings. (CR2:82);

- When awarding trial attorney's fees is mandated by statute, an award of conditional appellate fees supported by evidence is also mandatory. *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) (concluding that a prevailing party in the district court who successfully appeals is entitled to appellate attorney's fees)[7];

- Any evaluation of the results obtained must necessarily take into account the facts: (1) Abraham himself put tens of millions of dollars at issue; (2) Sullivan prevailed on appeal in this Court and in the supreme court; and, (3) Sullivan has obtained more favorable rulings from the district court on every issue in the case;

- Even using the lowest number of hours any party said was reasonable and the lowest rate for any attorney that any evidence suggested was reasonable for every single one of those hours, the award would have had to be more than triple what it was; and,

- Using rates Abraham acknowledges are reasonable yields an 8% discount from $296,805 in pre-remand fees. The district court acted without reference to guiding principles and entered a judgment that reflected an 88% discount on the reasonable attorney's fees Sullivan proved.

To calculate reasonable attorney's fees, the factfinder should multiply the number of hours worked by the attorney's hourly rate. *Lopez v. Bailon*, No. 07-14-

---

[7] *See infra* Section IV.

00442-CV, 2016 WL 4158034, at *5 (Tex. App.—Amarillo Aug. 4, 2016, no pet.). When a district court gives lip service to some of the relevant factors, but fails to act with reasoned reference to them, the proper course is to reverse. *Lowe v. Johnson Cnty.*, No. 03A01-9309-CH-00321, 1995 WL 306166, at *8 (Tenn. Ct. App. May 19, 1995).

## II.    The district court's judgment must be reversed because there is no evidence to support Findings of Fact 5, 6, 7, 8, or 9.

There is no evidence to support the district court's Findings of Fact 5, 6, 7, 8, or 9. (CR2:444–45). Findings 5, 6, 7, 8, and 9 would not have been made absent erroneously sustaining Abraham's objections to Sullivan's evidence. (CR2:397–98, 439).

In a nonjury trial, findings of fact have the same force and dignity as a jury's verdict. *Dallas Cnty. Constable Precinct No. 5 v. Garden City Boxing Club, Inc.*, 219 S.W.3d 613, 615–16 (Tex. App.—Dallas 2007, no pet.).  When a complete reporter's record is filed, a trial court's findings of fact are reviewed for legal sufficiency under the same standard as is applied to a jury verdict. *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. Ap.—Houston [14th Dist.] 2008, pet. denied).

In conducting a legal sufficiency review, an appellate court reviews the record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802,

20

827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.3d 706, 711 (Tex. 1997)).

Evidence is legally insufficient when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810.

Accordingly, an unsupported or generalized conclusion has no probative force and is legally insufficient. *See Hancock v. Variyam*, 400 S.W.3d 59, 69 (Tex. 2013); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). As a result, a finding based on an unsupported or generalized conclusion cannot survive a no evidence challenge. *See Roger v. Zanetti, ___ S.W.3d ____*, 2017 WL 1553154, at *7 (Tex. 2017); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

### A. The district court abused its discretion and failed to apply the law correctly in sustaining Abraham's objections.

The district court summarily sustained Abraham's objections to Sullivan's attorney's fees application. (CR2:439). This was reversible error.

### 1. There is evidence of the fees customarily charged in the locality for similar services.

Contrary to Abraham's objections 1 and 2, (CR2:397, 439), Sullivan offered evidence of fees customarily charged in the locality for similar services. (CR2:34, 66; CR2:410 (issue preserved)). Abraham's own expert also offered this evidence. (CR2:91). Because there is evidence of reasonable rates in the locality—from both parties' respective experts, there is some evidence of a reasonable rate in the locality. *City of Keller*, 168 S.W.3d at 827.

### 2. Sullivan offered ample evidence from which both Abraham and the district court could engage in a meaningful review of the fees sought.

Sustaining Abraham's objection 3, (CR2:397, 439), was an abuse of discretion because the Supreme Court of Texas has explicitly permitted recovery of fees under the lodestar method when actual billing records *did not even exist*. *Long*, 442 S.W.3d at 255–56; *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012).

Sullivan provided detailed information about work performed, who performed the work, when, how long it took, and the rate of the attorney performing the work by expert testimony on June 24, 2016. (CR2:21, 34–56). Texas law requires no more. *Long*, 442 S.W.3d at 255.

The district court signed its final judgment eight months later, on February 28, 2017. (CR2:440). In the eight months between Sullivan's expert's testimony

and the final judgment, the record discloses no evidence that Abraham ever sought to discover Sullivan's counsel's billing records. This is an independent reason for which the district court's sustaining Abraham's objection was an abuse of discretion. *Abraham v. Greer*, 509 S.W.3d 609, 617 (Tex. App.—Amarillo 2016, pet. denied).

Nor did Abraham ever identify any specific testimony—in more than 20 pages of time descriptions—that was objectionable for any reason. A global, non-specific objection constitutes no objection as a matter of law. Objections must raise a specific failure to comply with the rules of procedure or evidence to the attention of the court. *Wilkins v. Royal Indemn. Co.*, 592 S.W.2d 64, 68 (Tex. Civ. App.—Tyler 1979, no writ). Because Abraham's objection failed to provide a specific basis for the district court to make an intelligent decision, Abraham's objection was no objection as a matter of law and it was an abuse of discretion for the district court to sustain it. *Sciarrilla v. Osborne*, 946 S.W.2d 919, 924 (Tex. App.—Beaumont 1997, pet. denied).

### 3. It was an abuse of discretion to sustain Abraham's testimonial objections.

The district court also abused its discretion in sustaining Abraham's objections 4, 5, 7, 8, 9, 10, and 12 because they do not offer a legal basis for excluding evidence. (CR2:398, 439). Instead, they are in the nature of expert

opinion testimony that, in effect, seeks discounts of the reasonable attorney's fees sought by Sullivan:

| | |
|---|---|
| Motion to Recuse | $ 6,187.50 |
| Partner rates in the first district court proceedings | $ 13,159.50 |
| Partner rates in the court of appeals | $ 5,604.00 |
| Associate rates in the Supreme Court of Texas | $ 5,764.50 |

"Objections" 4, 5, 7, 8, 9, 10, and 12 are mere comments on the weight of evidence or attempts to cloak expert testimony as a legal objection. They fail to specify a legal basis, no legal basis is apparent from the context, and no legal basis exists for sustaining these "objections." It was therefore an abuse of discretion for the district court to sustain them. *Sciarrilla v. Osborne*, 946 S.W.2d 919, 924 (Tex. App.—Beaumont 1997, pet. denied) (General objections are no objection at all.).

### 4. Blended rates are commonplace and comply with the Texas Disciplinary Rules.

The district court failed to apply the law correctly in sustaining Abraham's objection 6. (CR2:398, 439). Blended rates are commonplace and comply with the Texas Disciplinary Rules of Professional Conduct. *See, e.g.*, *Khan v. Chaudhry*, No. 09-14-0479-CV, 2016 WL 1158734, at *5–6 (Tex. App.—Beaumont Mar. 24, 2016, pet. denied); *D'Lux Movers & Storage v. Fulton*, No. 02-06-0019-CV, 2007 WL 1299400, at *4–5 (Tex. App.—Fort Worth May 3, 2007, pet. denied); 1 TEX. PRAC. GUIDE WILLS, TRUSTS & ESTATE PLANNING § 2:63 (Dec. 2016); Mark D.

White & L. Hayes Fuller, III, *Attorney Fees Update*, 66 THE ADVOC. (TEXAS) 144, 173 (Spring 2014) (acknowledging the frequency with which blended rates are employed); Robert B. Gilbreath, *Caught in a Crossfire*, TEX. TECH L. REV. 139, 178 (1996) (recommending the increased use of blended rates).

> **5.** **Abraham's litigation tactics, not the amounts Sullivan seeks, disincentivize the cessation of litigation. In any event, this is not a recognized basis for a legal objection.**

Nowhere in the rules of procedure or evidence is there an objection for the disincentivization of the cessation of litigation. Sustaining an objection that lacks a basis in law was an abuse of discretion. *See, e.g.*, *Simmons v. State*, 100 S.W.3d 484, 492–93 (Tex. App.—Texarkana 2003, pet. ref'd).

Moreover, the evidence in this case is clear regarding the cessation of litigation. Abraham defended an award of $6,500 in attorney's fees all the way to the Supreme Court of Texas, all the while knowing that he had incurred nearly $50,000 in fees in the original trial court proceedings. (CR2:82). Now, having acknowledged that the hours his legal team spent on this litigation are a relevant factor in ascertaining a reasonable number of hours for Sullivan's legal team to have spent, and knowing that, apples to apples, the parties spent nearly an identical number of hours on this case, Abraham defends an award of $35,000 in attorney's fees while knowing that his legal team incurred 3.4 times that amount. (CR2:82–83). Abraham's own unreasonable positions—themselves a lagniappe on his

admission that his defamation claim was frivolous from the start—have prohibited the cessation of this litigation. (RR3:94–95).

**B.    There is no evidence to support Findings of Fact 5, 6, 7, 8, and 9.**

**1.    Salem Abraham sued Sullivan for defamation despite knowing prior to filing suit that Sullivan was not Greer's source.**

No evidence supports Finding of Fact 5 or 6. (CR2:444; CR2:448 (preserved)) Abraham himself admitted facts that necessarily mean this lawsuit was filed in violation of Rule 13 of the Texas Rules of Civil Procedure. Abraham's filing this lawsuit was an effort to punish Michael Quinn Sullivan for Daniel Greer's actions. (CR1:9–12). Abraham's pleadings acknowledge that Michael Quinn Sullivan was not present at the Honeycomb Pie Shop event that was the subject of Daniel Greer's blog post. (CR1:14–15). Abraham also acknowledges that Michael Quinn Sullivan published a story about the same event. (CR1:14). Abraham sued Sullivan for alleged libel done by Greer and AgendaWise, not for anything Sullivan himself did. (CR1:9–12).

When Abraham filed this lawsuit, Daniel Greer had already sworn under oath that Michael Quinn Sullivan was not his source. (RR3:94). Abraham was present when Greer made such testimony. (RR3:94). Abraham admitted that he had no facts tending to contradict Greer's sworn testimony. (RR3:94).

26

Michael Quinn Sullivan had also already sworn under oath that he had provided no information to Greer regarding Greer's story. (RR3:95). Abraham was present during this testimony, too. (RR3:95). Abraham admitted that he had no facts tending to contradict Sullivan's sworn testimony. (RR3:95).

Abraham further admitted that, even after filing this lawsuit, he had no information tending to inculpate Michael Quinn Sullivan. (RR3:93). He sued him anyway. Based on Abraham's own admissions, Abraham's purpose for suing Michael Quinn Sullivan cannot have been to recover damages from Sullivan, as he pled. (CR1:15).

Abraham also admitted in his pleadings that he wanted to discover how Michael Quinn Sullivan had learned about the Levelland meeting. (CR1:15). That information, however, would not make any fact in the case—whether background or material—more or less likely to be true. This case was filed as a fishing expedition unrelated to any concern about Sullivan's having defamed Abraham, as Abraham's own pleadings demonstrate as a matter of law. This is an improper purposes for filing a lawsuit as a matter of law. *See In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180–81 (Tex. 1999).

Finally, the judgment dismissing Abraham's defamation claim against Sullivan was entered because the lawsuit was based on, related to, or in response to Michael Quinn Sullivan's exercise of the right to speak on a matter of public

concern and Abraham had no evidence to support one or more essential elements of his claim. (CR1:534, 768). TEX. CIV. PRAC. & REM. CODE § 27.003(a). Findings 5 and 6 are contrary to Conclusion of Law 13. (CR2:445). Furthermore, the district court lost plenary power to alter or amend that judgment years ago, and lacked power to enter findings contrary to the portions of that judgment that became final years ago. No evidence supports the district court's Finding 5 or Finding 6 that this lawsuit emanated from any sincere and justifiable concern about Abraham's reputation.

> **2.** **No evidence supports a relationship between Sullivan and Greer such that it was proper to infer that Sullivan could have been Greer's source.**

No evidence supports Finding 7. (CR2:444; CR2:448 (preserved)) When he filed this lawsuit, Abraham had only surmise and suspicion about any relationship between Greer and Sullivan. Sullivan published a non-defamatory article about the Levelland meeting in one forum two days before Greer published an allegedly defamatory article in a different forum. (CR1:14). Sullivan was not present at the Levelland meeting and Abraham knew it. (CR1:14–15). Sullivan denied under oath having been Greer's source before this lawsuit was filed, and Greer denied under oath that Sullivan was his source before this lawsuit was filed. (RR1:93–95). Abraham admitted that he had "no facts" to support his surmise and suspicion. (RR1:93). No evidence supports Finding 7.

**3.     The award to Michael Quinn Sullivan of $35,000 in attorney's fees through remand from the Supreme Court relies on an incorrect legal standard and has no evidence to support it.**

The district court's Finding 8 determines that "reasonable and necessary attorneys' fees for the services of [Sullivan's] attorneys, from the beginning of this case until remand by the Supreme Court of Texas to this Court, is [sic] in the amount of $35,000. (CR2:444–45).

First, the district court applied the incorrect legal standard to the evidence in finding an amount of "reasonable and necessary" attorney's fees. (CR2:444; CR2:449 (preserved)) The TCPA requires an award of "reasonable attorney's fees," but the district court added "necessary"—an element not present in the TCPA. TEX. CIV. PRAC. & REM.  CODE § 27.009(a)(1). "Reasonable" is distinct from "reasonable and necessary," as this Court has previously held. *Busteed v. Coldspring Oakhurst Consol. Indep. Sch. Dist.*, No. 07-02-00103-CV, 2002 WL 31549428, at *3 (Tex. App.—Amarillo Nov. 18, 2002, no pet.). *See also Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 606 (Tex. App.—Dallas 1990, no writ) (holding that, unlike the provisions of TEX. BUS. & COM. CODE § 17.50(d), which requires that attorney's fees must be necessary in a DTPA proceeding, Civil Practice & Remedies Code section 38.001 requires only that the amount of attorney's fees be reasonable); *Prairie Valley Ind. Sch. Dist. v. Sawyer*, 665 S.W.2d 606, 611 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (holding that

29

former article 2226 of the Texas Revised Civil Statutes required testimony that attorney's fees are reasonable and did not require evidence of necessity). Applying an incorrect legal standard is, without more, reversible error. *Sullivan*, 488 S.W.3d at 299.

In addition, no evidence supports Finding 8. (CR2:444). As shown above, the parties' respective evidence regarding the amount that constitutes a reasonable attorney's fee in this case does not diverge significantly. The discrepancies in the parties' evidence were:

- Abraham sought some $30,715.50 in discounts off of the $296,805 in reasonable fees prior to remand. (CR2:403–10);

- There was no dispute that, at a minimum, 589 hours was a reasonable number of hours to have spent on this case prior to remand. (CR2:59, 82–83, 86); and,

- The unrefuted basis for the difference in the number of hours spent on this case by the parties is, based on the evidence, entirely attributable to the prior reply brief in this Court, the reply in support of Sullivan's petition for review, and Sullivan's reply brief on the merits in the supreme court. *Supra* subsection I.B.(1).

There is no basis in the evidence for reducing the reasonable attorney's fees that Sullivan proved according to the evidentiary standards established by the supreme court by some $260,000. The district court nevertheless disregarded the evidence and awarded an arbitrary sum. Because no evidence supports this

30

Finding, Finding 8 and the portion of the judgment that directly flows from it must be reversed. (CR2:439 ¶2, 444).

**4.    The award to Michael Quinn Sullivan of $7,200 in attorney's fees for work after remand relies on an incorrect legal standard and has no evidence to support it.**

Like Finding 8, Finding 9 discloses that the district court applied an incorrect legal standard by determining "reasonable and necessary" attorney's fees, in contravention of the TCPA, which mandates an award of reasonable attorney's fees. (CR2:444; CR2:449 (preserved)). TEX. CIV. PRAC. & REM. CODE § 27.009(a); *Busteed v. Coldspring Oakhurst Consol. Indep. Sch. Dist.*, No. 07-02-00103-CV, 2002 WL 31549428, at *3 (Tex. App.—Amarillo Nov. 18, 2002, no pet.). *Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 606 (Tex. App.—Dallas 1990, no writ); *Prairie Valley Ind. Sch. Dist. v. Sawyer*, 665 S.W.2d 606, 611 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). Applying an incorrect legal standard is, without more, reversible error. *Sullivan*, 488 S.W.3d at 299.

Additionally, no evidence supports reducing the amount of reasonable attorney's fees Sullivan proved to the standard required by the supreme court from $12,358.50 to $7,200. Abraham never controverted, questioned, or challenged any time or task entry or rate charged supporting this award of fees. (CR2:419–20). Accordingly, there was no evidence supporting Finding 9 or the portion of the final judgment that flows directly from it. (CR2:439 ¶3, 444).

31

**III.** **In Findings of Fact 8 and 9, the trial court reversibly erred by commingling in a broad-form finding multiple damages elements that are legally insufficient.**

**A.** **Reversible error is presumed under *Casteel* and its progeny.**

Reversible error is presumed when a broad-form finding commingles elements that are legally insufficient. *Thota v. Young*, 366 S.W.3d 678, 680 (Tex. 2012); *Zaidi v. Shah*, 502 S.W.3d 434, 439–40 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Reversible error is presumed because the reviewing court cannot determine whether the finding is based on an invalid element. *Crown Life Ins. Co., v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000). The Supreme Court of Texas in *Casteel* explained as follows:

> It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury based a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the appellate court is often unable to determine the effect of this error. The best the court can do is determine that some evidence *could* have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant *should* be held liable on proper, legal grounds.
>
> Accordingly, we hold that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory.
>
> . . .
>
> [I]t is impossible for us to conclude that the jury's answer was not based on one of the improperly submitted theories.

*Id.* at 388-89.

The supreme court subsequently expanded *Casteel* to apply to a broad-form damages finding that includes legally insufficient elements.

> A trial court's error in instructing a jury to consider erroneous matters, whether an invalid liability theory or an unsupported element of damage, prevents the appellant from demonstrating the consequences of the error on appeal.
>
> . . .
>
> We hold that *Casteel's* reasoning applies equally to broad-form damage questions, and under its rationale we conclude that the charge error in this case was harmful.

*Harris Cnty. v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002); *see Thota*, 366 S.W.3d at 680 ("We have held that reversible error is presumed when a … broad-form question comingles damage elements that are unsupported by legally sufficient evidence.").

**B.    *Casteel* and its progeny apply to findings of fact.**

Although *Casteel* and *Harris County* arose in the context of jury trials, at least four appellate courts in Texas have recognized that their principles also apply to findings of fact made by a trial court after a bench trial.[8]  The most notable of those cases is *Zaidi v. Shah*, where the Fourteenth Court of Appeals reversed on that basis and explained as follows:

---

[8] *See Zaidi v. Shah*, 502 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Town Ctr. Mall, L.P. v. Dyer*, 2015 WL 5770583, at *7 (Tex. App.—Fort Worth 2015, pet. denied); *In re Marriage of C.A.S and D.P.S.*, 405 S.W.3d 373, 394-95 (Tex. App.—Dallas 2013, no pet.); *Tagle v. Galvan*, 155 S.W.3d 510, 516 (Tex. App.—San Antonio 2004, no pet.).

> *Casteel* and its progeny are intended to remedy the trial court's error in failing to eliminate—or at to segregate—the factfinder's consideration of invalid claims [or elements]. The error is harmful when it results in a broad-form finding that prevents the reviewing court from determining whether the finding is based on valid claims [or elements]. The same error can arise, with the same resulting harm, when the trial court is the factfinder.

502 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see Harris Cnty.*, 96 S.W.3d at 233.

In *Zaidi*, the trial court made findings of fact that included a cumulative damage award for multiple causes of action. *Id.* at 438–39. Because many of the liability findings were legally insufficient, it was impossible for the court of appeals to know whether the broad-form damage finding was based on a legally insufficient claim. *Id.* at 439, 441, 442–44, 445. The appellants in *Zaidi* requested the trial court to issue additional findings of fact identifying the specific damages awarded for each claim, but the trial court refused. *Id.* at 437, 440–41. As a result, the court of appeals reversed, based on the *Casteel* line of cases, and reasoned as follows:

> The trial court's global findings were burdened with more causes of action that the evidence would bear, so we must reverse and remand unless we are 'reasonably certain that the [factfinder] was not significantly influenced' by the inclusion of invalid theories of recovery. Because it is impossible determine the extent to which the trial court awarded actual and punitive damages on an invalid basis, we have no such reasonable certainty. We instead conclude that the trial court's error … 'is

34

harmful because it prevent[ed] proper presentation of the case on appeal.'

. . .

As in the *Casteel* line of cases, we must remand the cause for a new trial.

*Id.* at 444–45.

This case, like *Zaidi,* also requires reversal based on *Casteel* and its progeny because the trial court made two findings of fact (No. 8 and No. 9) that award attorney's fees as actual damages under the TCPA, and many of the elements accompanying each damage finding are legally insufficient.[9] (CR2:444–45).

## C.    Finding of Fact 8

Finding of Fact 8 awards Sullivan attorney's fees as actual damages "from the beginning of this case until remand by the Supreme Court of Texas to this Court … in the amount of $35,000." (CR2:444).  This damages finding is "based upon" the following elements:

(1)    "the Court's <u>knowledge</u> of attorney's fees, including the rates customarily charged in the locality for similar services;"

(2)    "the <u>evidence</u> presented on the fees customarily charged in the locality for similar services;"

---

[9]  TEX. CIV. PRAC. & REM. CODE § 27.009 ("Damages and Costs") (the actual "damages" that a court shall award under Section 27.009(a) include "reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice an equity may require."); *see Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.) (recognizing that attorney's fees may be recovered as actual damages when provided for by statute) (quoting *Eberts v. Businesspeople Personnel Servs., Inc.*, 620 S.W.2d 861, 863 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.)).

(3)     "the Court's <u>observation and evaluation</u> of what amount of legal services were provided by the attorneys for the parties;"

(4)     "this Court's <u>evaluation </u>of what level of attorney services were reasonable and necessary in this case;"

(5)     "this Court's <u>evaluation</u> of the duplication of legal services, and"

(6)     "the legal services which this Court <u>believes and finds</u> were excessive, unreasonable and unnecessary."  (CR2:444).

The vast majority of these damage elements are conclusory and unsupported by any detail or specification.  Elements 1, 3, 4, 5, and 6 broadly reference the trial court's "knowledge," "evaluation," "observation and evaluation," and, what the trial court "believes and finds;" but none of the Elements sets forth *what* the trial court's "knowledge," "evaluation," "observation and evaluation," and "belief" actually is for the respective elements and they are not contained in the post-remand record.[10] (CR2; RR3).

Additionally, Elements 3, 4, and 5 each reference an "evaluation" that was made by the trial court about "what amount of legal services were provided by the attorneys for the parties" [Element 3]; "what level of attorney services were

---

[10]  Element 2 references the "evidence" that was "presented on the fees customarily charged in the locality for similar legal services."  That evidence shows that the rates charged by Abraham's counsel were within $10 dollars an hour of the blended rate charged by Sullivan's counsel. (CR2:453–54)  That evidence also shows that the total fees charged by Abraham's counsel from the inception of the case through the time that the case was remanded to the trial court by the Supreme Court of Texas was $131,402.58. (CR2:449)  As a result, Element 2 also does not support the trial court's finding of $35,000 in fees as actual damages under the TCPA. (C2R:445)

36

reasonable and necessary in this case" [Element 4]; *and*, "the duplication of legal services." [Element 5]. (CR2:444).

The plain, ordinary meaning of "evaluation" is to "determine" or "assess."[11] However, Elements 3, 4, and 5 do not set forth the trial court's actual determination or assessment about the matters listed in each element, and, again, that determination or assessment is not in the reporter's record from the post-remand hearing. (CR2; RR3). As a result, this Court can only speculate about what the trial court's "evaluation" is that is referenced in Elements 3, 4, and 5.

The same problem exists for Element 6. (CR2:444). It references "the legal services which [the trial court] believes and finds were excessive, unreasonable, and unnecessary." However, there is no specification in Element 6 about what the trial court's "belief" and "finding" actually is with respect to any legal services that "were excessive [and] unnecessary." (CR2:444). That "belief" and "finding" is also not included the post-remand record. (CR2; RR3). Once again, this Court must guess about the trial court's "belief" and "finding" that is referenced in Element 6 and speculate how that "belief" and "finding" might support the broad-form damages finding of $35,000.

Accordingly, Elements 1, 3, 4, 5, and 6 that accompany the broad-form damage finding in Finding of Fact Number 8 are unsupported, generalized

---

[11] *Webster's New World Dictionary, Second College Edition* at 484; *The New Roget's Thesaurus in Dictionary Form* at 175.

conclusions and are legally insufficient. (CR: 444–45). *See Hancock,* 400 S.W.3d at 69; *Coastal Transp. Co.*, 136 S.W.3d at 232.

In addition, Elements 4 and 6 explicitly include the consideration of necessity, which is not part of the controlling legal standard under the TCPA. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1); *Busteed*, 2002 WL 31549428, at *3.

Like in *Zaidi*, Sullivan objected to the trial court that the damage elements accompanying Finding of Fact Number 8 are conclusory, inadequate, and legally insufficient. (CR2:449–55). Sullivan also requested the trial court to issue additional findings of fact that specifically identify the basis for an award of attorneys' fees as damages in Finding of Fact 8, but the trial court refused.[12] (CR2:449-55). Sullivan further objected to the consideration of the necessity of legal services as not related to the applicable legal standard under the TCPA. (CR2:449). The trial court's error in overruling Sullivan's objection and refusing his request for additional, specific findings resulted in a broad-form damage finding accompanied by six damage elements; five of which are legally insufficient.[13] (CR2:444).

---

[12] *See Zaidi*, 502 S.W.3d at 440 ("The Turnaround parties requested additional findings of fact, asking the trial court to identify the damages awarded to each of the Borrowers for each cause of action, but the trial court did not do so. This issue therefore has been preserved for our review.").

[13] Sullivan also asked this Court to abate this appeal and require the trial court to make more specific findings of fact in lieu of these conclusory damage elements. This Court denied Sullivan's request on July 5, 2017.

38

This error is reversible under *Casteel* and its progeny because it prevents the Court from determining the extent to which the finding of $35,000 in attorney's fees as damages in Finding of Fact No. 8 is based on an invalid/legally insufficient element. *Thota*, 366 S.W.3d at 680; *Harris County*, 96 S.W.3d at 231, 233–34; *Zaidi*, 502 S.W.3d at 439–41.

**D.    Finding of Fact 9**

That same problem exists with Finding of Fact 9.  It awards attorneys' fees as actual damages "after remand by the Supreme Court" in the amount of $7,200." (CR2:445).  This damages finding is "based upon" the following elements:

(1)    "the Court's <u>knowledge</u> of fees customarily charged in the locality for similar legal services;"

(2)    "the <u>evidence</u> presented on the fees customarily charged in the locality for similar services;"

(3)    "[the] <u>evidence</u> of the reasonable number of hours worked for similar work;"

(4)    "the Court's <u>evaluation </u>of what level of services was necessary;" and

(5)    "the Court's <u>evaluation</u> of … what rendered services were unnecessary."

(CR2:445).

Like with Finding of Fact No. 8, several of these damage elements are generalized conclusions and unsupported by any detail or specification. Specifically, Elements 1, 4 and 5 broadly reference the trial court's "knowledge"

39

and "evaluation;" but none of these damage elements sets forth what the trial court's "knowledge" and "evaluation" actually is with respect to that element.

In that regard, Elements 4 and 5 each reference an "evaluation" by the trial court about "what level of services was necessary" and "what rendered services were unnecessary," But, neither damage element includes the trial court's actual "determination" or "assessment" about the matters listed in each element.[14] (CR2:445). That "determination" or "assessment" is also not included in the post-remand record. (CR2; RR3).

Additionally, Elements 4 and 5 explicitly incorporate considerations of necessity, which are not part of the applicable legal standard under the TCPA. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1); *Busteed*, 2002 WL 31549428, at *3. As a result, this Court must speculate about what the trial court's "evaluation" is that is referenced in Elements 4 and 5, which accompany Finding of Fact No. 9.

Accordingly, damage elements 1, 4, and 5 that accompany the broad-form damage finding in Finding of Fact Number 9 are unsupported, generalized conclusions and are legally insufficient. (CR2:445). *See Hancock,* 400 S.W.3d at 69; *Coastal Transp. Co.*, 136 S.W.3d at 232.

Sullivan objected to the trial court that these damage elements are conclusory, inadequate, and legally insufficient. (CR2:449–55). Sullivan also

---

[14] *Supra* note 11.

requested the trial court to issue additional findings of fact that specifically identify the basis for an award of attorneys' fees as actual damages in Finding of Fact No. 9, but the trial court refused.[15] (CR2:449-55). Sullivan further objected to the trial court's use of inapplicable elements in the legal standard. (CR2:449). The trial court's error in overruling Sullivan's objection and refusing his request for additional, amended, specific findings resulted in a broad-form damage finding accompanied by five damage elements, three of which are legally insufficient.[16] (CR2:445).

Just like with Finding of Fact No. 8, this error is presumed reversible under *Casteel* and its progeny. *See Thota*, 366 S.W.3d at 680. It prevents this Court from determining the extent to which the trial court's award of $7,200 in attorneys' fees as actual damages in Finding of Fact 9 is based on an invalid/legally insufficient element and prevents proper presentation of the case on appeal. *See Harris County*, 96 S.W.3d at 231, 233–34; *Zaidi*, 502 S.W.3d at 439–41.

---

[15] *See Zaidi*, 502 S.W.3d at 440 ("The Turnaround parties requested additional findings of fact, asking the trial court to identify the damages awarded to each of the Borrowers for each cause of action, but the trial court did not do so. This issue therefore has been preserved for our review.").

[16] *Supra* note 13.

**IV. The district court erred in failing to award conditional appellate attorney's fees.**

Sullivan offered evidence of a reasonable amount of attorney's fees conditioned on a successful appeal in this Court and, if necessary, a further successful appeal in the Supreme Court of Texas. (CR2:68). The district court abused its discretion in refusing to award them.

An award of reasonable attorney's fees is mandatory for a successful movant under the TCPA. TEX. CIV. PRAC. & REM. CODE § 27.009(a); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Sullivan*, 472 S.W.3d at 680. When an award of trial attorney's fees is made mandatory by statute, an award of appellate attorney's fees is also mandatory. *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015); *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 198–99 (Tex. App.—Fort Worth 2012, no pet.).

Abraham has argued that Sullivan is entitled to fees only for defending against Abraham's frivolous legal action, not to fees incurred in Sullivan's successfully appealing the erroneous judgment procured by Abraham. The Dallas court of appeals rejected the argument Abraham makes in *Cruz v. Van Sickle*, 452 S.W.3d 503, 526–27 (Tex. App.—Dallas 2014, no pet.) in the context of the TCPA. Sullivan's argument would undermine the purpose of the TCPA, which is, in part, to deter frivolous litigation and to provide a mechanism for prompt

dismissal of strategic lawsuits against public participation. TEX. CIV. PRAC. & REM. CODE § 27.009.

In *Ventling*, the supreme court explicitly rejected the argument that a prevailing party in the trial court was not entitled to appellate attorney's fees as a successful appellant.

Because Civil Practice and Remedies Code Chapter 38 directs courts to interpret that chapter to promote its underlying purpose, a significant motivating factor in the court's analysis was the purpose of section 38.001: to encourage parties to pay their just debts and to discourage vexatious and unnecessary litigation. *Ventling*, 466 S.W.3d at 155; *Gates v. City of Dallas*, 704 S.W.2d 737, 740 (Tex. 1986). Interpreting Chapter 38 such that a prevailing party in the trial court cannot obtain appellate attorney's fees for a successful appeal of a trial court's error, said the supreme court, would defeat the purpose of the statute.

The same analysis applies to the TCPA. Like Chapter 38, the TCPA mandates that it "be construed liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011(b). An award of reasonable attorney's fees is mandated by the TCPA. *Id.* § 27.009(a)(1). Strategic lawsuits against public participation (SLAPP suits) chill public debate because defendants often incur substantial legal fees in defending against frivolous suits. Laura Lee Prather, *Five Years of Anti-SLAPP in Texas* 3 (2016). The purpose of the attorney's fees

provision in the TCPA is to discourage parties from filing frivolous lawsuits intended to inflict litigation expenses on an adversary in retaliation for engaging in public discourse, and to encourage the prompt disposition of these frivolous lawsuits. TEX. CIV. PRAC. & REM. CODE § 27.002; *Hersh v. Tatum*, ___ S.W.3d ____, 2017 WL 2839873, at *1 (Tex. 2017). It would defeat the purpose of the TCPA to hold that Sullivan cannot obtain reasonable attorney's fees for successfully appealing the district court's erroneous judgment.

As the Fifth Circuit has explained,

> It is unbecoming . . . to hail the defendant into court by means of false allegations and then to complain when the defendant hires skillful, experienced and expensive advocates to defend against those allegations. Having wrongfully kicked the snow loose at the top, [Abraham] must bear the consequences of the avalanche at the bottom.

*Schwartz v. Folloder*, 767 F.2d 126, 133–34 (5th Cir. 1985). *See also Deutsch v. Henry*, 2016 WL 7165993, at *23 (W.D. Tex. Dec. 7, 2016). Accordingly, the district court's refusal to award Sullivan conditional appellate fees for successfully prosecuting this appeal must be reversed.

## CONCLUSION AND PRAYER

For the foregoing reasons, as well as for the reasons specified in Sullivan's prior briefs in this Court and in the Supreme Court of Texas, Sullivan respectfully prays that this Court reverse the trial court's judgment and findings of fact and

conclusions of law and render judgment for Sullivan awarding him the amount of reasonable attorney's fees, costs, expenses, and the sanction that he proved in the record. Sullivan alternatively requests that the Court reverse and remand this case to the trial court for a proper determination of reasonable attorney's fees, costs, expenses, and the sanction as proven by Sullivan. Sullivan additionally prays for all other and further relief, both at law and in equity, to which he may be justly entitled.

Respectfully submitted,

**AKERMAN LLP**

 /s/ N. Terry Adams, Jr.

**James E. "Trey" Trainor, III**
State Bar No. 24042052
trey.trainor@akerman.com
AKERMAN LLP
700 Lavaca, Suite 1400
Austin, Texas 78701
Telephone: (512) 623-6700
Fax: (512) 623-6701

**N. Terry Adams, Jr.**
State Bar No. 00874010
terry.adams@akerman.com
**Joseph M. Nixon**
State Bar No. 15244800
joe.nixon@akerman.com
**Nicholas D. Stepp**
State Bar No. 24077701
nicholas.stepp@akerman.com
AKERMAN LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
Telephone: (713) 623-0887
Fax: (713) 960-1527

**Counsel for Appellant Michael Quinn Sullivan**

## CERTIFICATE OF COMPLIANCE

In accord with Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned attorney hereby certifies that the foregoing brief contains 10,477 words, excluding those portions permitted by TEX. R. APP. P. 9.4(i)(1). The undersigned further certifies that this brief has been prepared using a typeface of no smaller than 14-point except for footnotes, which are no more than 12-point. *See* TEX. R. APP. P. 9.4(e).

*/s/ Nicholas D. Stepp*
Nicholas D. Stepp

## CERTIFICATE OF SERVICE

I hereby certify that I have complied with the Electronic-Filing Rules for the Supreme Court of Texas and that on this the 14th day of July, 2017, the foregoing Brief on the Merits was e-filed with the Clerk of the Court and that a true and correct copy of same has been e-served on all opposing counsel listed below in accordance with the Texas Rules of Appellate Procedure as specified by the Electronic-Filing Rules.

Mr. John H. Lovell
Ms. Courtney Lovell
LOVELL, LOVELL, ISERN & FARABOUGH, LLP
Eagle Centre Building
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314

*Counsel for Appellee*

*/s/ Nicholas D. Stepp*
Nicholas D. Stepp

# No. 07-17-00125-CV

_____

## IN THE SEVENTH COURT OF APPEALS

## AT AMARILLO, TEXAS

_____

### MICHAEL QUINN SULLIVAN

*Appellant,*

V.

### SALEM ABRAHAM

*Appellee.*

_____

On Appeal from the 31st District Court, Hemphill County, Texas
(No. 6994)
After Remand from the Supreme Court of Texas
(No. 14-0987)

_____

## APPENDIX
_____

| | |
|---|---|
| Final Judgment, signed February 27, 2017 | Tab A |
| Findings of Fact and Conclusions of Law, filed March 20, 2017 | Tab B |
| Motion to Abate Appeal for Findings of Fact and Conclusions of Law | Tab C |
| Order denying Motion to Abate, July 5, 2017 | Tab D |
| Order Awarding Attorney Fees and Sanctions, *McGibney v. Retzlaff*, No. 067-270669-14, 2016 WL 1703694 (67th Dist. Ct., Tarrant Cnty., Apr. 14, 2016) | Tab E |

# Appendix A

CAUSE NO. 6994

| SALEM ABRAHAM | § | 31ST DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| MICHAEL QUINN SULLIVAN | § | |
| | § | |
| | § | |
| Defendant. | § | HEMPHILL COUNTY, TEXAS |

**FILED**
11:37
MAR 0 6 2017
LISA JOHNSON
CLERK District Court
HEMPHILL COUNTY TEXAS
SG -COC

## FINAL JUDGMENT

ON THIS DAY came on to be heard the Motion for Entry of Final Judgment by Defendant, Michael Quinn Sullivan, and the Court, after considering the Motion, the pleadings, all of the evidence before the Court, and the argument of counsel, and following the mandate of the Supreme Court of Texas and Texas Civil Practice and Remedies Code § 27.009 et. seq., hereby finds that Plaintiff's objections to Sullivan's attorney fee application are sustained and orders that Defendant, Michael Quinn Sullivan ("Sullivan"), shall have and recover from Plaintiff, Salem Abraham ("Plaintiff"), as follows:

1. Court Costs in the amount of $1,621.60, plus post-judgment interest thereon at the statutory rate of 5% per annum until paid;

2. Reasonable attorney's fees from the beginning of the case until remand by the Supreme Court of Texas to this Court in the amount of $35,000.00, plus post-judgment interest thereon at the statutory rate of 5% per annum until paid;

3. Reasonable attorney's fees after remand by the Supreme Court of Texas to this Court in the amount of $7,200.00, plus post-judgment interest thereon at the statutory rate of 5% per annum until paid;

{40934094;1}

439

4. Other expenses incurred by Sullivan that justice and equity require to be awarded in the amount of $17,240.03, plus post-judgment interest thereon at the statutory rate of 5% per annum until paid ; and

5. Sanctions against Abraham the Court determines sufficient to deter Abraham from bringing similar actions in the amount of $15,000.00, plus post-judgment interest thereon at the statutory rate of 5% per annum until paid.

This is a final, appealable judgment. All relief requested and not expressly granted is DENIED.

Signed this _28th_ day of February, 2017.

HON. STEVEN EMMERT

APPROVED as to form only and not as to substance or content:

/s/ Joseph M. Nixon
Joseph M. Nixon
joe.nixon@akerman.com
Akerman LLP
1300 Post Oak Blvd. Suite 2300
Houston, Texas 77056
(713) 623-0887 telephone

APPROVED as to form only, and not as to substance or content:

/s/ John H. Lovell
John H. Lovell
john@lovell-law.net
Courtney D. Miller
courtney@lovell-law.net
LOVELL LOVELL ISERN & FARABOUGH, LLP
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101
(806) 373-1515 telephone

# Appendix B

| | | |
|---|---|---|
| SALEM ABRAHAM, | § | IN THE 31ST DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | IN AND FOR |
| MICHAEL QUINN SULLIVAN, | § | |
| | § | |
| Defendant. | § | HEMPHILL COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On June 29, 2016, the above captioned cause came on for an evidentiary hearing on the issue of costs, reasonable attorney's fees, additional expenses, and sanctions. The Court provided Salem Abraham additional time after the hearing to offer evidence upon submission, with Michael Quinn Sullivan also having additional time to reply and offer evidence upon submission. Abraham responded on July 11, 2016, and Sullivan replied on July 21, 2016. After considering the pleadings, the mandate and opinion of the Texas Supreme Court, the evidence, and the arguments and authorities presented by counsel, the Court, in response to a request from Defendant, makes it findings of fact and conclusions of law as follows:

### A. Findings of Fact

1.      Any finding of fact constituting in whole or in part a conclusion of law shall be deemed a conclusion of law.

2.      This suit was filed April 9, 2013.

3.      The underlying statements made by Daniel Greer and Agendawise, which are the subject of Plaintiff's petition in this case, were completely false, without any factual basis, and were per se defamatory to Salem Abraham.

4. With Salem Abraham's profession being a "hedge fund" manager, who is often thoroughly investigated by prospective investors or clients, the fake and defamatory statements of Daniel Greer and Agendawise had the potential to be quite harmful to Salem Abraham and to his business.

5. Salem Abraham brought this legal action out of a sincere and justifiable concern for his reputation among his clients and investors, and among potential clients and investors.

6. This legal action was not brought by Abraham to deter or prevent Sullivan from exercising constitutional rights, nor for any improper purposes. Abraham did not bring the legal action to harass, to cause unnecessary delay, or to increase the cost of litigation. Rather, the Court finds that Abraham brought this suit for the purposes of (1) exercising his constitutionally-protected right to protect his reputation, and (2) to determine how and by whom the utterly false defamatory statements about him originated, and were transmitted.

7. The Court further finds that the relationship of Michael Quinn Sullivan to AgendaWise and Daniel Greer, and Michael Quinn Sullivan's prior publication about the Levelland meeting, were such as would lead a reasonable person to suspect that Michael Quinn Sullivan may have been involved in the transmission of false information regarding Abraham.

8. Based upon the Court's knowledge of attorney's fees, including the rates customarily charged in the locality for similar legal services, the evidence presented on the fees customarily charged in the locality for similar services, the Court's observation and evaluation of what amount of legal services were provided by the attorneys for the parties, and this Court's evaluation of what level of attorney's services were reasonable and necessary in this case, as well as this Court's evaluation of the duplication of legal services, and the legal services which this Court believes and finds were excessive, unreasonable and unnecessary, the Court finds that reasonable and necessary attorneys' fees for the

FINDINGS OF FACT AND CONCLUSIONS OF LAW
L:\Paula\DATA\Abraham.Sullivan.6261.10\Pleadings\Findings of Fact and Conclusions of Law.wpd
Page 2

444

services of Defendant's attorneys, from the beginning of this case until remand by the Supreme Court of Texas to this Court, is in the amount of $35,000.00.

9. Based upon the Court's knowledge of fees customarily charged in the locality for similar legal services, the evidence presented on the fees customarily charged in the locality for similar services, plus evidence of the reasonable number of hours worked for similar work, and the Court's evaluation of what level of services was necessary, and what rendered services were unnecessary, the Court finds that reasonable and necessary attorneys' fees for the services of Defendant's attorneys, after remand by the Supreme Court, is in the amount of $7,200.00.

10. Based upon the evidence submitted, and the Court's knowledge of what expenses are normally incurred by attorneys and billed to fee-paying clients, Defendant incurred other expenses in defending against the legal action that justice and equity require to be awarded to Defendant, in the amount of $17,240.03.

11. Based upon the evidence submitted and the Court's evaluation of the merits of the claims and defenses, and the motives and reasons for Abraham filing this suit, the Court determines sanctions in the amount of $15,000.00 against Abraham is sufficient to deter Abraham from bringing similar actions.

## B. Conclusions of Law

12. Any conclusion of law constituting in whole or in part a finding of fact shall be deemed a finding of fact.

13. Abraham failed to establish by clear and specific evidence a prima facie case for each essential element of a defamation claim.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
L:\Paul\DATA\Abraham.Sullivan.6261.10\Pleadings\Findings of Fact and Conclusions of Law.wpd

Page 3

445

14.   In addition to all other relief awarded to defendant in this case, Defendant shall recover from Plaintiff his taxable costs of court.

SIGNED this ___15th___ day of March 2017.

HONORABLE STEVEN EMMERT
31st Judicial District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW                                   Page 4
L:\Paula\DATA\Abraham.Sullivan.6261.10\Pleadings\Findings of Fact and Conclusions of Law.wpd

446

# Appendix C

ACCEPTED
07-17-00125-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/15/2017 9:37:06 AM
Vivian Long, Clerk

No. 07-17-00125-CV

_____

**IN THE SEVENTH COURT OF APPEALS
AT AMARILLO, TEXAS**

_____

MICHAEL QUINN SULLIVAN,
*Appellant,*
v.
SALEM ABRAHAM,
*Appellee.*

_____

On Appeal from the 31st District Court of Hemphill County, Texas
(No. 6994)
After Remand from the Supreme Court of Texas
(No. 14-0987)

---

**MOTION TO ABATE APPEAL
FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

COMES NOW Appellant Michael Quinn Sullivan and respectfully asks this

Court to abate this appeal and direct the trial court, the 31st District Court of

Hemphill County, Texas, to enter Findings of Fact and Conclusions of Law in

connection with its final judgment of February 28, 2017. (CR2:439)[1]

---

[1] This is an appeal after remand. The Clerk's Record for this appeal is in two volumes, one containing items filed prior to the first appeal ("Volume 1"), and the other containing items filed on remand ("Volume 2"). Volume 1, containing 790 pages, was filed in in the first appeal (No. 07-13-00396-CV) by the Hemphill County District Clerk on September 25, 2013, and in this cause by order of the Court on April 25, 2017. Volume 2 contains 485 pages, and was filed in this cause by the Hemphill County District Clerk on May 25, 2017. For citations to the Clerk's Record, Appellant uses the familiar citation format (CR[volume]:[page])

## SUMMARY

This is an appeal from an award of attorney's fees, costs, expenses, and a sanction—all in favor of Michael Quinn Sullivan and against Salem Abraham. Michael Quinn Sullivan proved that he incurred $296,805 in attorney's fees from the inception of the case until the supreme court remanded the case to the district court. The district court awarded Sullivan $35,000 in attorney's fees for work prior to remand.

This result is highly unusual. In offering his attorney's fees as a yardstick by which to measure reasonableness, Salem Abraham admitted that he spent nearly 4 times the amount awarded to Sullivan by the district court. Considering the entirety of the evidence, Abraham offered a basis to challenge only about 10% of the fees Sullivan proved were reasonable and necessary. The district court's judgment, (CR2:439–40), represents <u>a 73% downward departure from the lowest attorney's fees figure offered by any party</u> in this case.

Exercising his rights under Texas law, Sullivan timely requested findings of fact and conclusions of law. (CR2:441) The purpose of findings and conclusions is so that an appellant can understand the basis for a trial court's decision and not have to guess at the reasons. The district court did not perform its ministerial duty because the district court's findings and conclusions shed no light on the reasons for its decision. They leave Sullivan in the position of having to guess, which

eviscerates Sullivan's rights to the findings and conclusions and defeats the purpose of the Rules.

Because Sullivan has a right under Texas law to obtain meaningful findings of fact and conclusions of law regarding the highly unusual judgment in this case, TEX. R. CIV. P. 297, Sullivan asks this Court to abate the appeal, refer this case to the district court, and direct the district court to enter proper findings of fact and conclusions of law.[2] This request is not made for delay, but only so that justice may be done.

**ARGUMENT**

**1.    Background**

This appeal follows an earlier appeal from a judgment signed by the 31st District Court on August 16, 2013. (CR1:768–69) That judgment was appealed to this Court and then to the Supreme Court of Texas. (CR1:772; CR2:4; CR2:16; CR2:18) This Court held that it was error for the district court to fail to award sanctions, which are mandatory under the Texas Citizens Participation Act. *Sullivan v. Abraham*, 472 S.W.3d 677, 683 (Tex. App.—Amarillo 2014), *rev'd in part*, 488 S.W.3d 294 (Tex. 2016).

The Supreme Court of Texas further held that it was error for the district court to import considerations of justice and equity into the determination of

---

[2] Sullivan timely objected below and requested additional and amended findings of fact and conclusions of law. (CR2:447)

3

reasonable attorney's fees. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). The case was thereafter remanded to the district court for entry of judgment awarding Michael Quinn Sullivan a sanction against Salem Abraham as well as costs, reasonable attorney's fees, and other expenses as justice and equity require. *Id.* at 300.

**2.  The "findings of fact and conclusions of law" filed by the district court do not satisfy the district court's ministerial duty to enter proper findings and conclusions.**

The primary purpose for findings of fact and is for a party to ascertain the true basis for the trial court's decision. *Rush v. Barrios*, 56 S.W.3d 88, 96 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A mere conclusion is inadequate. *Thompson v. Railroad Comm'n*, 240 S.W.2d 759, 761–62 (Tex. 1951).

The Findings of Fact and Conclusions of Law leave Michael Quinn Sullivan and this Court in the position of having to guess—in the same position he would be in if there were *no* findings and conclusions. When requested, trial courts must make findings and conclusions adequate to provide an appellate court a basis upon which to review the trial court's application of the law to the facts. *State v. Saenz*, 411 S.W.3d 488, 495 (Tex. Crim. App. 2013). Error with regard to Findings of Fact is harmful if it prevents an appellant from properly presenting a case to the appellate court. TEX. R. APP. P. 44.1(a)(2); *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996).

4

In this case, the trial court's findings of fact and conclusions of law force

Sullivan to guess at the reasons the district court reached its decision. For example,

the text of the judgment is:

> [A]fter considering the Motion, the pleadings, all of the evidence before the Court, and the argument of counsel, and following the mandate of the Supreme Court of Texas and Texas Civil Practice and Remedies Code § 27.009 et seq., hereby finds that . . . Michael Quinn Sullivan ("Sullivan"), shall have and recover from Plaintiff, Salem Abraham ("Plaintiff") as follows: . . . Reasonable attorney's fees from the beginning of the case until remand by the Supreme Court of Texas to this Court in the amount of $35,000, plus post-judgment interest thereon at the statutory rate of 5% per annum until paid.

(CR2:439 ¶2) The trial court's explanation in its findings sheds no

light on why the court reached this decision. It says merely:

> Based upon the Court's knowledge of attorney's fees, including the rates customarily charged in the locality for similar legal services, the evidence presented on the fees customarily charged in the locality for similar services, the Court's observation and evaluation of what amount of legal services were provided by the attorneys for the parties, and this Court's evaluation of what level of attorney's services were reasonable and necessary in this case, as well as this Court's evaluation of the duplication of legal services, and the legal services which this Court believes and finds were excessive, unreasonable and unnecessary, the Court finds that reasonable and necessary attorney's fees for the services of Defendant's attorneys, from the beginning of this case until remand by the Supreme Court of Texas, is in the amount of $35,000.00.

5

(CR2:444–45 ¶8) The district courts findings are similarly unhelpful regarding

post-remand attorney's fees. The final judgment says:

> [A]fter considering the Motion, the pleadings, all of the
> evidence before the Court, and the argument of counsel,
> and following the mandate of the Supreme Court of
> Texas and Texas Civil Practice and Remedies Code
> § 27.009 et seq., hereby finds that . . . Michael Quinn
> Sullivan ("Sullivan"), shall have and recover from
> Plaintiff, Salem Abraham ("Plaintiff") as follows: . . .
> Reasonable attorney's fees from the beginning of the
> case until remand by the Supreme Court of Texas to this
> Court in the amount of $35,000, plus post-judgment
> interest thereon at the statutory rate of 5% per annum
> until paid.

(CR2:439 ¶3) The court's explanation in its findings sheds no light on why the

court reached this decision. It says merely:

> Based upon the Court's knowledge of fees customarily
> charged in the locality for similar legal services, the
> evidence presented on the fees customarily charged in the
> locality for similar legal services, the evidence presented
> on the fees customarily charged in the locality for similar
> services, plus evidence of the reasonable number of hours
> worked for similar work, and the Court's evaluation of
> what level of services was necessary, and what rendered
> services were unnecessary, the Court finds that
> reasonable and necessary attorneys' fees for the services
> of Defendant's attorneys, after remand by the Supreme
> Court, is in the amount of $7,200.00.

(CR2:445 ¶9) When a trial court makes findings that are so incomplete that an

appellant is forced to guess and an appellate court is unable to make a legal

6

determination, abatement for adequate findings of fact and conclusions of law is required. *Saenz*, 411 S.W.3d at 495.

**3.     Abatement at this stage is proper and necessary.**

Abatement at this stage of the appeal is the proper vehicle for obtaining the required findings and conclusions. *Saenz*, 411 S.W.3d at 495; Order of Abatement, *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads LP*, No. 09-14-00316-CV (Sep. 18, 2014), *attached as* Appendix A. If this Court abates the appeal at this early stage, the parties will be able to brief the issues of attorney's fees and sanctions efficiently and this Court's ability to review the reasons for the trial court's judgment will be enhanced, all with little delay and minimal wasted effort.

**4.     Abatement for findings of fact will help explain the basis for the highly unusual judgment.**

The unusual nature of the judgment is best highlighted by three considerations. First, the attorney's fees provisions in the Texas Citizens Participation Act are entitled "Damages and Costs." TEX. CIV. PRAC. & REM. CODE § 27.009. The purpose of this portion of the Texas Citizens Participation Act is to ensure that parties who are targeted by frivolous strategic lawsuits against public participation are made whole. Indeed, for frivolous lawsuits intended to silence public participation and speech on issues of public concern, forcing an opponent to incur such large sums of attorney's fees is the intended consequence: The rap is the ride, because the substantive claims lack merit.

It is unbecoming to hail a defendant into court by means of false allegations and then complaint when the defendant hires skillful, experienced and expensive advocates to defend against those allegations. Having wrongfully kicked the snow loose at the top, Salem Abraham must bear the consequences of the avalanche at the bottom. *Schwartz v. Folloder*, 767 F.2d 125, 133–34 (5th Cir. 1985).

Fee awards in similar cases have been very close to the amount of fees Sullivan seeks. For example, a Tarrant County district court awarded Rauhauser $300,383.94 plus a $150,000.00 sanction. *McGibney v. Retzlaff*, No. 67-270669-14, in the 67th District Court, Tarrant County, Texas (Apr. 14, 2016).

Second, the lowest amount of attorney's fees incurred by either party exceeds $130,000. The district court here, without explanation or argument, awarded barely more than 25% of that amount. The district court's fee award to Sullivan represents a mere 12% of his attorneys fees. Nor are Sullivan's fees in any way unusual or unexpected. Rauhauser's fees in a similar case amounted to approximately $300,000 too. *Id.*

Finally, the discrepancy in the hours spent by the respective sides' attorneys are, apples-to-apples, quite similar. The table below, based on evidence that was before the district court when it ruled, summarizes an apples-to-apples comparison of the time spent on this case by the respective sides.[3]

---

[3] (CR2:36–60; CR2:82–83; CR2:406–07)

| Phase | Plaintiff Abraham | Defendant Sullivan |
|---|---|---|
| District Court | 177.2 hours | 140.9 hours |
| Seventh Court of Appeals | 127.85 hours | 131.2 hours |
| Supreme Court of Texas | 246.2 hours | 250.72 hours |
| Total, apples-to-apples | 551.25 hours | 523.82 hours |

The only hours excluded from this apples-to-apples comparison are the hours incurred by Sullivan's counsel in preparing the reply brief in this court, the reply in support of Sullivan's petition for review in the supreme court, and Sullivan's reply brief on the merits in the supreme court. In total, Sullivan's counsel spent 184.8 hours on these three briefs. (CR2:36–60) As shown to the district court (CR2:406–07) and summarized above, the discrepancy in the numbers of hours spent on this case by the respective parties' counsel is entirely attributable to the procedural posture of this case. Sullivan was the appellant in this court and the petitioner in the supreme court. Appellants reasonably and routinely file reply briefs, and Petitioners in the supreme court reasonably and routinely file both a Reply in Support of their Petition for Review as well as a Reply Brief on the Merits. Salem Abraham himself has followed this practice. Reply Brief of Salem Abraham, *Abraham v. Greer*, No. 07-12-00494-CV (Apr. 5, 2013).

These three considerations, separately and together, suggest that the district court's judgment is highly unusual in light of the applicable law and the facts before that court when it ruled.

**5.     Abatement for findings of fact will permit the district court to analyze Texas law and identify how the court applied the facts to the law.**

Pursuant to TEX. R. CIV. P. 296, Michael Quinn Sullivan filed a request for findings of fact and conclusions of law on March 7, 2017. (CR2:441) When requested, Findings of Fact and Conclusions of law are required by Texas law in cases, like this one, where the trial court decides attorneys' fees without a jury. *Heafner & Assocs. v. Koecher*, 851 S.W.2d 309, 313 (Tex. App.—Houston [1st Dist.] 1992, no writ). The primary purpose for findings of fact and is for a party to ascertain the true basis for the trial court's decision. *Rush v. Barrios*, 56 S.W.3d 88, 96 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Therefore, the trial court was required to file adequate findings of fact and conclusions of law explaining the true basis for its decision on or before March 27, 2017, twenty days after Sullivan's timely request. TEX. R. CIV. P. 297.

The district court was required to award Sullivan reasonable attorney's fees—that is, a fee that is not excessive or extreme, but moderate or fair. *Sullivan v. Abraham*, 488 S.W.3d at 299. The district court was therefore required to explain the basis of its attorney's fee award in light of the time and labor involved, the novelty and difficulty involved, the skill required to perform the legal services

10

properly, the exclusion from other employment by the attorneys because they accepted this case, the customary fee, time limitations, the experience and reputation of the counsel, awards in similar cases, the amount in controversy, the nature and length of the relationship between attorney and counsel, and the results obtained. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

In the event the district court found a particular rate as unreasonable, in order to explain its decision, the court would need to say that rate was unreasonable as well as the basis on which the court concluded that a different rate was reasonable—specifying that rate, too. The only way for the respective parties to know what work the district court *may* have considered unnecessary, unreasonable, or duplicative, it was the district court's ministerial duty to specify what work the court considered unnecessary or duplicative.

Sullivan provided to the district court every single time entry for every single timekeeper from the beginning of this case. But nowhere in the district court's findings and conclusions did it identify a single duplicative time entry. Nowhere in the district court's findings and conclusions did it specify what services were excessive, unreasonable, or unnecessary. For that matter, Abraham's own evidence and argument never identified a single time entry wherein the services offered were duplicative, unreasonable, or unnecessary.

11

Nowhere in the district court's "findings and conclusions" did it identify what a reasonable hourly rate is for legal services of the kind provided in this case. Nowhere in the district court's "findings and conclusions" did that court identify the number of hours that would have been reasonable to expend in defense of a First Amendment case seeking millions of dollars in damages, achieve success in part on appeal to an intermediate court, and then achieve success on the remaining legal issues in the court of last resort in Texas.[4]

## CONCLUSION AND PRAYER

Under Texas law, appellants cannot be forced to guess at the reasons motivating a trial court's judgment. However, that is precisely the scenario created by the findings and conclusions entered in this case. They shed no light on why the trial court entered judgment by departing downward 73% from the lowest figure offered by any party for pre-remand attorney's fees. In fact, the trial court's findings and conclusions recite the judgment nearly verbatim.

The controlling issue is whether, under the circumstances of the case, the appellant is required to guess at the reasons for the trial court's decision. *Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 54–55 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Based on the factors identified above and in light of the highly unusual decision, Sullivan is left to guess and this court could not meaningfully

---

[4] Sullivan timely objected and requested additional and amended findings of fact and conclusions of law. (CR2:447)

review the district court's findings and conclusions. Sullivan is left as though no Findings of Fact or Conclusions of Law were ever filed and the trial court simply refused to fulfill its ministerial duty to enter findings and conclusions explaining the true basis for its decision.[5] *Brooks v. Housing Auth. of El Paso*, 926 S.W.2d 316, 319 (Tex. App.—El Paso 1996, no writ).

Therefore, Michael Quinn Sullivan respectfully asks this Court to:

1. Abate this appeal for 40 days;

2. Direct the district court to:

(a) file proper findings of fact and conclusions of law within 20 days of an order by this Court granting this motion, pursuant to TEX. R. CIV. P. 297;

(b) Allow the parties 10 days after the filing of Findings of Fact and Conclusions of Law to request additional and amended Findings of Fact and Conclusions of Law, pursuant to TEX. R. CIV. P. 298;

(c) File any additional or amended findings and conclusions within 10 days after such request is filed, pursuant to TEX. R. CIV. P. 298;

3. Suspend all appellate deadlines while the case is abated; and,

4. Grant any other relief necessary to facilitate the preparation and filing of adequate Findings of Fact and Conclusions of Law.

---

[5] This motion to abate focuses for illustrative purposes on the award of $35,000 in attorney's fees to Sullivan for defending this case in the district court and then successfully prosecuting an appeal in this court and for successfully prosecuting a further appeal to the Supreme of Texas. Sullivan provides this focus for brevity and for illustrative purposes only, and without waiver of his other arguments. Sullivan is also entitled to have the district court explain why the court awarded only $7,200 in attorney's fees on remand, and only a $15,000 sanction in a case filed after Plaintiff Abraham knew he could not recover damages from Michael Quinn Sullivan, but sought tens of millions of dollars anyway.

Respectfully submitted,

**AKERMAN LLP**

By: */s/ Nicholas D. Stepp*_____
      **N. Terry Adams, Jr.**
      State Bar No. 00874010
      terry.adams@akerman.com
      **Nicholas D. Stepp**
      State Bar No. 24077701
      nicholas.stepp@akerman.com
      **Joseph M. Nixon**
      State Bar No. 15244800
      joe.nixon@akerman.com
      **James E. "Trey" Trainor, III**
      State Bar No. 24042052
      trey.trainor@akerman.com
      1300 Post Oak Boulevard, Suite 2500
      Houston, TX 77056
      (713) 623-0887 (Telephone)
      (713) 960-1527 (Fax)
**Attorneys for Appellant Michael Quinn Sullivan**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Ms. Courtney Miller, counsel for Appellee Salem Abraham, regarding this motion. Ms. Miller indicated that Appellee is opposed to the relief requested in this motion.

*/s/ Nicholas D. Stepp*
Nicholas D. Stepp

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2017, the foregoing document was served on all counsel of record via e-filing, as follows:

John H. Lovell
john@lovell-law.net
Courtney D. Miller
courtney@lovell-law.net
LOVELL, LOVELL, ISERN & FARABOUGH, LLP
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101
(806) 373-1515 (Telephone)

*/s/ Nicholas D. Stepp*
Nicholas D. Stepp

# Appendix A

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO.  09-14-00316-CV**
_____

**CHEVRON PHILLIPS CHEMICAL COMPANY LP, Appellant**

**V.**

**KINGWOOD CROSSROADS, L.P., Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-04-04123 CV**

**ORDER**

Chevron Phillips Chemical Company LP ("CP Chem") filed a motion to abate the appeal and to remand the case to the trial court for entry of findings of fact and conclusions of law. In an earlier appeal from the underlying trial, the appellate court reversed part of the judgment on the jury's verdict and remanded the case to the trial court "for determination of the amount of attorneys' fees Kingwood CrossRoads[, L.P.] is entitled to recover for its defense of CP Chem's breach-of-contract claim." *See Chevron Phillips Chem. Co. LP v. Kingwood*

1

*CrossRoads, L.P.*, 346 S.W.3d 37, 78 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The Court of Appeals instructed that the case was remanded "for Kingwood CrossRoads to segregate these fees or demonstrate segregation is not required and for the trial court to determine the amount of fees recoverable for defense of CP Chem's contract claim." *Id.* at 70. On remand, the trial court determined that the amount of attorneys' fees recoverable by Kingwood Crossroads, L.P. ("KCR") for its defense of CP Chem's contract claim is $2,648,101.50 plus post-judgment interest and additional sums in the event of further appeals. The trial court denied CP Chem's request for findings of fact and conclusions of law. In its response filed in opposition to the appellant's motion to abate, KCR argues that CP Chem is not entitled to findings of fact and conclusions of law because the proceeding on remand was not evidentiary in nature.

We abate the appeal and remand the case to the trial court for entry of findings of fact and conclusions of law. *See* Tex. R. Civ. P. 298. If the trial court resolved all issues as questions of law, without deciding any facts, it shall so state in its conclusions of law. The trial court shall allow the parties ten days after the trial court signs its findings of fact and conclusions of law to request additional findings and conclusions. *See* Tex. R. Civ. P. 298. The appeal is abated and all appellate timetables are suspended while the case is before the trial court. A

supplemental record, including any findings of fact made by the trial court and the trial court's conclusions of law, any additional findings and conclusions requested by the parties, and any additional or amended findings and conclusions made by the trial court, shall be filed with the Court of Appeals by October 28, 2014. The appeal will be reinstated without further order of this Court when the supplemental clerk's record is filed. The brief of the appellant shall be due thirty days after the supplemental clerk's record is filed with the Court of Appeals.

ORDER ENTERED September 18, 2014.

PER CURIAM

Before McKeithen, C.J., Kreger and Horton, JJ.

3

# Appendix D

FILE COPY



**Court of Appeals**

Seventh District of Texas
Potter County Courts Building
501 S. Fillmore, Suite 2-A
Amarillo, Texas 79101-2449
www.txcourts.gov/7thcoa.aspx

BRIAN QUINN
Chief Justice

JAMES T. CAMPBELL
Justice

PATRICK A. PIRTLE
Justice

VIVIAN LONG
Clerk

MAILING ADDRESS:
P. O. Box 9540
79105-9540

(806) 342-2650

July 5, 2017

James E. "Trey" Trainor III
AKERMAN LLP
700 Lavaca Street, Suite 1400
Austin, TX 78701
* DELIVERED VIA E-MAIL *

Nicholas D. Stepp
N. Terry Adams Jr.
Joseph M. Nixon
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2500
Houston, TX 77056
* DELIVERED VIA E-MAIL *

John H. Lovell
Courtney D. Miller
LOVELL, LOVELL, ISERN
 & FARABOUGH, L.L.P.
Eagle Centre Building
112 West 8th Avenue, Suite 1000
Amarillo, TX 79101
* DELIVERED VIA E-MAIL *

**RE:** Case Number: 07-17-00125-CV; Trial Court Case Number: 6994

**Style:** Michael Quinn Sullivan v. Salem Abraham

Dear Counsel:

By Order of the Court, the Motion to Abate Appeal for Findings of Facts and Conclusions of Law is this day denied.

Very truly yours,

*Vivian Long*

VIVIAN LONG, CLERK

# Appendix E

2016 WL 1703694 (Tex.Dist.) (Trial Order)
District Court of Texas.
67th Judicial District
Tarrant County

James MCGIBNEY, et al,

v.

Thomas RETZLAFF, et al.

No. 067-270669-14.
April 14, 2016.

**Order Awarding Attorney Fees and Sanctions**

 **\*1**  After considering the decision in *Rauhauser v. McGibney*, 2014 Tex. App. LEXIS 13290 (Tex. App.—Fort Worth 2014, no pet.) (remanding this case for award of attorney's fees and sanctions), defendant Neal Rauhauser's motion to award attorney's fees and sanctions pursuant to TEX. CIV. PRAC. & REM. CODE § 27.001, *et seq.*, Rauhauser's "Notice of Plaintiffs' New Criminal Aggravating Misconduct and Request for Nonmonetary Sanctions," the original and supplemental affidavits for attorney's fees of Rauhauser attorney Jeffrey L. Dorrell and fee statements appended thereto, the "liberal construction" directive to Texas courts in TEX. Civ. PRAC. & REM. CODE § 27.011(b), plaintiffs' response to Rauhauser's motion, the pleadings, and other affidavits and evidence on file, the Court finds:

(i) Plaintiffs' brought this suit against Rauhauser willfully and maliciously to injure Rauhauser by deterring Rauhauser from exercising his constitutional rights—specifically, to truthfully criticize plaintiffs;

(ii) Plaintiffs brought this suit against Rauhauser with objective substantial certainty that the suit would inflict litigation costs on Rauhauser;

(iii) Plaintiffs filed multiple lawsuits in two states at substantially the same time making substantially the same allegations;

(iv) Plaintiffs brought their suits against Rauhauser in conscious disregard of plaintiffs' duties or of Rauhauser's rights and without just cause or excuse;

(v) Plaintiffs' filing of multiple SLAPP suits in two states at substantially the same time making substantially the same allegations manifests plaintiffs' intent to continue using baseless suits to retaliate against, punish, and deter plaintiffs' enemies, and necessitates a significant deterrent sanction;

(vi) Plaintiffs engaged in aggravating misconduct by willfully and intentionally harassing—and using confederates to willfully and intentionally harass—both Rauhauser and Rauhauser's attorney, the objective of which was to punish the exercise of Rauhauser's constitutional rights in the past, deter the exercise of Rauhausr's constitutional rights in the future, and impair Rauhauser's ability to retain legal counsel in defense of plaintiffs' baseless claims; and

(vii) Plaintiffs' aggressive filing of multiple lawsuits and aggravating misconduct caused Rauhauser to incur **$300,383.84** in attorney's fees to defend through trial and appeal.

As to Rauhauser's requested attorney's fees, the Court finds that affidavit evidence of Rauhauser's attorney's fees submitted complies with TEX. CIV. PRAC. & REM. CODE § 18.001(c) and was not controverted pursuant to §

18.001(e). Accordingly, the Court admits into evidence for purposes of this order the original and supplemental affidavits of attorney Jeffrey L. Dorrell and finds the amounts of attorney's fees stated therein to be reasonable in accordance with TEX. Civ. PRAC. & REM. CODE § 18.001(b). The Court has considered the factors set forth in TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, STATE BAR RULES, Art. 10 § 9, Rule 1.04; *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). As a result, the Court makes the following specific findings as to each:

### (i) The time and labor required.

**\*2** The time spent by each attorney or staff member rendering services to Rauhauser on each specific task was contemporaneously logged and quantified to the nearest *one-tenth* of an hour, and totaled over 600 hours as of September 6, 2015, for trial, appeal, and remand.

### (ii) The novelty and difficulty of the questions involved.

The TCPA is a relatively new statute enacted on June 17, 2011. Many issues have arisen in Texas appellate courts regarding interpretation and application of its provisions. These include the constitutionality of the TCPA itself, whether a plaintiff's nonsuit can defeat application of the TCPA, whether the TCPA's provision for awarding attorney's fees is mandatory, whether the TCPA's provision for awarding sanctions "sufficient to deter the filing of similar actions" is mandatory, whether review of a trial court's failure to rule on the motion is by interlocutory appeal or petition for writ of mandamus, whether the TCPA applies to "non-public" speech, and what constitutes a "matter of public concern," and whether an appellate court can reverse and render judgment on attorney's fees and sanctions or must remand to the trial court for further proceedings. Several of these were presented in the case at bar, including, without limitation:

(A) Plaintiffs argued both in this Court and on appeal that they were immunized from the TCPA's remedies because Rauhauser chose to appear and defend their defamation SLAPP suit without ever having been served. This was an issue on which no appellate court had spoken in the context of the TCPA at the time plaintiffs raised it. The issue required extensive research and briefing in order for Rauhauser to prevail over plaintiffs' argument in the court of appeals. *Rauhauser v. McGibney* is now extensively cited in law review articles and practice manuals on this point.

(B) Plaintiffs argued both in this Court and on appeal that they were immunized from the TCPA's remedies because plaintiffs nonsuited their claims approximately 5 hours after Rauhauser filed his TCPA motion to dismiss. This was also an issue on which no appellate court had spoken in the context of the TCPA at the time plaintiffs raised it. The issue required extensive research and briefing in order for Rauhauser to prevail over plaintiffs' argument in the court of appeals. *Rauhauser v. McGibney* is now extensively cited in law review articles and practice manuals on this point, too.

(C) It was necessary for Rauhauser to show that plaintiff McGibney was a "public figure" in order for the TCPA to apply to the defamation claims made in the case at bar. This issue required extensive research into James McGibney's personal background, prior statements, and litigation. This research ultimately resulted in discovery of extensive evidence of McGibney's many media appearances, and even the affidavit of a McGibney expert filed in a Nevada lawsuit admitting that McGibney was a public figure.

As a result, the novelty and difficult of the questions presented in the case at bar justifies both the more-than-600 hours expended in trial, appeal, and on remand, and the hourly rates charged.

### (iii) The skill requisite to perform the service properly.

The area of free speech, defamation claims, and the TCPA is highly specialized and complex. After the U.S. Supreme Court began to "constitutionalize" the tort of defamation with *New York Times v. Sullivan* in 1964, the elements to be

proved and which party has the burden of proof took on a complexity not seen in any other tort practice. The enactment of the TCPA in 2011 added a new layer of complexity, magnified by the fact that new appellate opinions changing or clarifying the interpretation of the statute are released on an almost weekly basis. These are not topics or issues on which "canned" briefing is available or on which the law is well-settled. Each issue requires independent research and meticulous briefing. This practice area requires an extremely high degree of skill to perform services properly. The attorneys performing services for Rauhauser possessed the high degree of skill required.

### (iv) The likelihood, if apparent to the client, that acceptance of the representation will preclude other employment by the lawyer.

**\*3** The over-600 hours of time expended by attorneys and staff of Hanszen Laporte over the 20 months in which that firm represented Rauhauser— through trial, then through an appeal (including oral argument), and on remand for attorney's fees and sanctions—precluded employment on other cases. Most of this time was been expended by attorney Jeffrey L. Dorrell, and represents approximately 25% of all time expended by that attorney on *all* legal matters during the relevant time period. Hanszen Laporte has 11 attorneys and a steady supply of paying clients on whose cases or matters Dorrell could have worked if he had not chosen to render services to Rauhauser. This is proven by the fact that Hanszen Laporte's revenues have grown by 178% during the three years immediately preceding the date of this affidavit, ranking it 50th out of all companies in Houston in revenue growth (the "Houston Fast 100") and 28th out of all Houston companies owned or managed by graduates of the University of Houston (the "Cougar 100").

### (v) The fee customarily charged in the locality for similar legal services.

In cases of defamation, First Amendment, and TCPA motions, there is no "locality" in the sense that attorneys in one "locality" might charge a higher price or hourly rate to draft a will for a client than attorneys in another "locality." The practice is so complex and specialized that only a small number of Texas attorneys are qualified to perform services for clients. Those highly-qualified attorneys travel to where a case is pending. Here, the "locality" is more accurately seen as the entire state of Texas. The hourly rate of **$550.00** is comparable to that of the small number of similarly-qualified attorneys in this field practicing in Texas.

### (vi) The amount involved and the results obtained.

Plaintiffs sued Rauhauser for **$1,000,000.00** in federal and state courts of two different states, including the case at bar. The Court takes judicial notice that, as a direct result of the efforts and highly competent representation of Hanszen Laporte, all claims against Rauhauser in all suits were ultimately disposed in his favor. Considerations of the amount in controversy and results obtained weigh heavily in favor of the Court's finding that the fee charged to Rauhauser in the case at bar was reasonable and that justice and equity require it to be awarded to Rauhauser.

### (vii) Time limitations imposed by the client or by the circumstances.

The "circumstances" of the TCPA impose several accelerated deadlines, both in the trial and appellate phases of litigation practice. These inflexible deadlines must be recognized and complied with, and take priority over more common deadlines in normal litigation. These deadlines thus require special efforts that necessarily increase the amount of attorney's fees that can be said to be "reasonable." Other circumstances include plaintiffs' aggressive abuse and harassment of Rauhauser's defense attorney—designed to deprive Rauhauser of the benefit of legal representation.

### (viii) The nature and length of the professional relationship with the client.

Neither attorney Jeffrey L. Dorrell nor any member of Hanszen Laporte, LLP, or its staff has any prior professional relationship with defendant Neal Rauhauser. After 19 months of representation, attorney Dorrell has never met Rauhauser, who does not reside in Texas. After plaintiffs sued Rauhauser, Rauhauser's online research of Dorrell's past SLAPP-suit appellate victories led him to request Dorrell's representation. The representation was an arm's-length transaction, with no attendant considerations to call into question the reasonableness of the hourly rates charged or the number of hours expended. This was not "pro bono" representation of a past or existing client as a courtesy for past business.

### (ix) The experience, reputation, and ability of the lawyer or lawyers performing the services.

The experience, reputations, and abilities of the lawyers performing the services for Rauhauser were of the highest caliber and were readily apparent to the Court at all phases of the litigation.

### (x) Whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.

**\*4** The fee negotiated in the engagement letter signed by Neal Rauhauser called for payment of an initial retainer of **$1,500.00**, which Rauhauser paid, and for future billings at a rate of **$550.00** per hour for Dorrell's services. Hanszen Laporte, LLP, sent Rauhauser regular monthly bills showing services provided and amounts incurrerd. Rauhauser is contractually liable to pay these amounts. The firm of Hanszen Laporte advanced expenses on Rauhauser's behalf and carried a receivable of over **$300,000.00** with a significant risk that no payment would ever be collected. This was anticipated at the time the representation was commenced (although not to the extent it ultimately reached), and the firm's usual hourly rates for noncontingent fee cases were adjusted upward by approximately 50% to reflect this risk. These facts, too, weigh heavily in favor of the Court's finding that the fee charged in the case at bar was reasonable, and that the interests of justice and equity require that it be awarded to Rauhauser from plaintiffs in full measure.

Therefore, the Court GRANTS Rauhauser's motion and orders that plaintiffs James McGibney and ViaView, Inc., shall, jointly and severally, pay to defendant Neal Rauhauser the following amounts:
(i) Total reasonable attorney's fees, litigation expenses, and court costs for the trial and first appeal of **$300,383.84**, as justice and equity require;

(ii) Sanctions sufficient to deter the filing of similar actions by plaintiffs in the future of $150,000.00.

(iii) Conditional appellate attorney's fees of **$50,000.00** for a second appeal to the court of appeals, which such appeal does not result in a complete reversal of all amounts awarded; and

(iv) Conditional appellate attorney's fees of **$25,000.00** if a petition for review is filed in the Texas Supreme Court, which such petition does not result in a complete reversal of all amounts awarded.

Plaintiffs shall pay the foregoing amounts, except for the conditional awards of appellate attorney's fees, to Neal Rauhauser not later than 30 days after the date this order is signed.

Furthermore, in view of plaintiffs' history of filing numerous lawsuits with the willful, malicious intent to injure those who have spoken critically of plaintiffs, the Court finds that monetary sanctions alone will not be sufficient to deter plaintiffs from filing similar such suits in the future. Therefore, in addition to the monetary sanctions awarded above, the Court orders the following nonmonetary sanctions:

(i) Plaintiffs shall disclose and transfer to Rauhauser the following domain names registered and used by plaintiffs days after the date on which the Court signs its order;

nealrauhauser.com

nealrauhauser.exposed

rauhauserunmasked.com

nealrauhauser.org

nealrauhauser.net

nealrauhauser.info

(ii) Plaintiffs shall disclose all domain names that plaintiffs or their agents have registered using, any form of the name of attorney "Jeffrey L. Dorrell" no later than 5 days after the date on which the Court signs its order:

(iii) Plaintiffs shall publish for 365 consecutive days a written apology on the first page of all websites owned by either plaintiff for calling Rauhauser a "woman beater" and "pedophile supporter" and admitting that plaintiffs had no evidence to support such accusations when they made them.

(iv) Plaintiffs shall publish for 365 consecutive days a written apology on the first page of all websites owned by either plaintiff for calling Dorrell a "pedophile" and admitting that plaintiffs had no evidence to support such an accusation when they made it.

This is a final, appealable order that disposes of all parties and claims in this suit.

SIGNED the *14*$^{th}$ day of *April*, of 2016.

<<signature>>

**PRESIDING JUDGE**

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.